STATE of Iowa, Appellee,

v.

Bruce Wayne ASH, Appellant.

No. 58735.

Supreme Court of Iowa.

Aug. 30, 1976.

Rehearing Denied Oct. 15, 1976.

Swift, Brown & Winick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., David L. Brown, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and REYNOLDSON, JJ.

LeGRAND, Justice.

A Polk County jury convicted defendant of the crime of breaking and entering in violation of § 708.8, The Code. He was sentenced to serve a term of not more than 10 years in the Men's Reformatory, and he appeals therefrom. We affirm.

Defendant claims the trial court erred in failing to exclude the identification testimony of Officer Foster; in failing to sustain his motion for directed verdict; and in admitting two guns as exhibits.

On the evening of March 25, 1971, Officer Foster was directed by radio dispatch to a Des Moines residence where a suspected prowling was in progress. When he arrived, a young boy informed him three men were breaking into the Henry R. Garlock residence. As the officer worked his way to the side of the house, he came upon three youths apparently about to leave the premises. He ordered them to halt. They stopped, but only for a few seconds. They then ran off in different directions. One of them was captured immediately; one's fate is not disclosed by the record. The third

one is defendant, who was taken into custody later.

I. The principal dispute concerns the circumstances under which Officer Foster identified defendant at trial. To put the matter in perspective it is necessary to give a brief chronology of events occurring immediately after the crime.

Officer Foster first identified defendant from a mug shot shown to him at the police station. This is the only picture he was shown. No attempt was made to use this identification at trial, and we therefore consider this out-of-court photographic identification only as it bears on Officer Foster's later in-court testimony. Our task is to decide if the police procedure in showing Officer Foster only a single picture with defendant's name imprinted thereon after the officer knew defendant was a prime suspect was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968).

Defendant relies heavily on three cases decided by the United States Supreme Court in 1967. They are *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. These three cases are generally taken as having established for the first time "standards and procedures for conducting pretrial confrontations between an eyewitness to a crime and the accused." *See Simmons v. United States, supra*, 390 U.S. at 382, 88 S.Ct. at 970, 19 L.Ed.2d at 1252; *Marshall v. Rose*, 499 F.2d 1163, 1165 (6th Cir. 1974).

Since the *Wade-Gilbert-Stovall* trilogy, we have had a number of cases considering the problems of in-court and out-of-court identification. *See State v. Salazar*, 213 N.W.2d 490, 494 (Iowa 1973); *State v. Canada*, 212 N.W.2d 430, 433 (Iowa 1973); *State v. Houston*, 209 N.W.2d 42, 44 (Iowa 1973); *Williamson v. State*, 201 N.W.2d 490, 491 (Iowa 1972); *State v. Masters*, 196 N.W.2d 548, 551 (Iowa 1972); *State v. Jones*, 193 N.W.2d 509, 512 (Iowa 1972); *Evans v. Rosenberger*, 181 N.W.2d 152, 157 (Iowa 1970); *State v. Walker*, 181 N.W.2d 143, 145 (Iowa 1970); *State v. Essary*, 176 N.W.2d 854, 855–858 (Iowa 1970); *State v. Wisniewski*, 171 N.W.2d 882, 884–885 (Iowa 1969).

The following general principles emerge from these cases:

■ 1. An out-of-court identification which is unnecessarily or impermissibly suggestive and which presents the likelihood of irreparable misidentification is a denial of due process and such evidence may not be used at a later trial;

■ 2. Despite the fact that a pretrial identification may not be used because of the illegal procedure by which it was obtained, the same witness may nevertheless identify a defendant at trial if such identification has an independent origin and is not "tainted" by the illegal procedure;

■ 3. Each case must be decided on its own facts and by a consideration of the totality of circumstances disclosed by the evidence; and

■ 4. The State has the burden to show by clear and convincing evidence that the identification made in court does have an independent origin and is not based upon—tainted by—the illegal identification procedure prior to trial.

With these principles in mind, we consider the evidence in this case.

Officer Foster testified on four different occasions. First, he testified at a preliminary hearing. Then he testified at defendant's first trial, which resulted in a hung jury. He then testified at a hearing on a motion to suppress. Finally, he testified again at defendant's second trial, the one which resulted in a conviction and the one which is now on appeal.

With some minor variations, Officer Foster's testimony remained steadfast throughout the proceedings. He testified that when he responded to the break-in call it was daylight. He was approximately 35 or 40 feet from defendant. He had defendant

under observation for a period which varied from "a couple of seconds" to a maximum of five seconds. He had an opportunity to notice defendant's facial features. He noted "outstanding" facial characteristics of the nose and cheeks. He was unable to describe any of defendant's clothing. On each occasion, he testified unequivocally that he could "definitely" identify defendant as one of the persons at the scene of the burglary.

Defendant challenged Foster's testimony throughout the proceedings on a number of grounds. He disputes the quality of the light, the distance between the officer and the three youths, the length of time involved in the confrontation, and the opportunity the officer had to observe facial features in view of the relative positions of the parties.

Defendant claims there was no independent basis for the officer's in-court identification and insists that it must have been the result of his examination of defendant's mug shot. As the State concedes this procedure was improper, defendant argues the in-court identification must fail.

We do not agree. Throughout his many examinations under oath, Foster's basic story never wavered. On each occasion, he testified unequivocally he could identify defendant. He testified, too, that his identification was independent of his examination of the mug shot at the police station. The fact that he testified the same on several occasions is of some significance. *State v. Salazar, supra,* 213 N.W.2d at 494. So, too, is the fact he survived vigorous cross-examination as to his version of what happened. *Simmons v. United States, supra,* 390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253.

This statement from *Simmons v. United States, supra,* 390 U.S. at 383, 88 S.Ct. at 971, 19 L.Ed.2d at 1253 is applicable here:

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. * * * This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. * * *

"The danger that use of technique [of photographic identification] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Factually, this case is quite similar to *State v. Canada, supra,* 212 N.W.2d at 433. As far as Foster's limited opportunity to observe is concerned, it is not unlike *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, 394 (1970). In both it was held a challenged in-court identification had an independent origin, although *Coleman* was reversed on other grounds.

■ Upon review of all the circumstances, we hold trial court was right in finding there was an independent origin for Officer Foster's in-court identification of defendant. The testimony was properly admitted.

II. What we have already said virtually disposes also of defendant's argument that he was entitled to a directed verdict. While several other grounds were urged in his motion, it was really bottomed on the claim the identification testimony should have been excluded. We agree that if Officer

Foster's testimony were thrown out, there is little to connect defendant with the commission of this crime. However, with that testimony, a jury case was clearly made.

■ Several witnesses testified there were three youths engaged in the prowling. Officer Foster came upon them before they left the premises. Upon being confronted by the officer, the three hastily fled the scene in an obvious effort to escape. Evidence of flight may be considered in determining guilt or innocence. *State v. Wilson*, 173 N.W.2d 563, 565, 566 (Iowa 1970); *State v. O'Meara*, 190 Iowa 613, 624–625, 177 N.W. 563, 568 (1920). There was evidence the Garlock house had been ransacked and items of personal property were missing. The missing guns were found where defendant could easily have discarded them. We hold that a jury question was engendered and defendant's motion for directed verdict was properly overruled.

III. This leaves for determination defendant's claim the two guns should not have been admitted as evidence against him.

Defendant's objection to the admission of the guns really takes two courses. First he claims there was no sufficient identification of these instruments to show any connection with the crime and, second, he insists that there is no satisfactory showing of the chain of possession from the time the guns were taken into custody until their production at trial.

The matter comes up this way. Mr. Garlock, the victim of this burglary, testified at the first trial. He said he had two guns, a .22 Winchester rifle and a .410 single shotgun. He testified these guns were missing after the break-in. The guns were not offered as exhibits at the first trial. Consequently they were not identified by Garlock as his missing weapons.

At the second trial, Mr. Garlock did not testify. The record shows he was "unavailable." The testimony he gave at the first trial was read into the record.

A neighbor, Mrs. Logston, testified the Garlocks were out of town on the day of the burglary. She checked the house from time to time while they were away. On the day in question, she had gone through the house about 1:30 in the afternoon and had seen two guns hanging in their usual place on the wall in one of the rooms. After the burglary, these guns were gone.

The evidence showed that one of the investigating officers found a .22 Winchester and a .410 single shotgun in a hedge 20 to 25 feet from the Garlock house.

■ We believe there was sufficient identification to permit the introduction of these exhibits into evidence.

■ To warrant their admission, it is not necessary to show they were actually connected with the crime. It is only necessary to show sufficient circumstances which make such connection probable or likely. *State v. Gray*, 239 N.W.2d 584, 586 (Iowa 1976); *State v. Galvan*, 181 N.W.2d 147, 151 (Iowa 1970); *State v. Johnson*, 162 N.W.2d 453, 456 (Iowa 1968).

■ We likewise find that the objection concerning custody is without merit. Officer Quick testified the guns were the same ones he found in the hedge. He identified them by the serial number on one of them and a police property tag on both. These are items not susceptible to change or alteration and what we said in *State v. Limerick*, 169 N.W.2d 538, 541 (Iowa 1969) disposes of defendant's objection:

"We have consistently * * * held the evidence properly admitted as within the discretion of the trial court where the exhibits consisted of solid objects, not easily susceptible to undetected alteration, such as money, *State v. Shilinsky, supra* [248 Iowa 596, 81 N.W.2d 444]; hammer and gun, *State v. Ford, supra* [259 Iowa 744, 145 N.W.2d 638]; a gun, *State v. Johnson*, Iowa, 162 N.W.2d 453; clothing and a body, *State v. Parker* [261] Iowa [88], 151 N.W.2d 505, 508; matches and glasses, *State v. Post*, 255 Iowa 573, 123 N.W.2d 11. Where the possibility of alteration of an exhibit is slight, the materiality of the alteration remote, and the exhibit has otherwise been properly iden-

tified we have dispensed with a showing of continuous custody."

There was no error in the admission of these exhibits.

■ IV. We have limited our consideration of this appeal to alleged errors occurring during defendant's second trial. He also asks that the judgment be set aside because of trial court error in overruling his motion for a directed verdict at his first trial, the one which resulted in a mistrial. We have disregarded that claim because, if there was error in the first trial, it is not reviewable on this appeal. *See Harden v. Illinois Central Railroad Company,* 254 Iowa 426, 428–29, 118 N.W.2d '76, 77–78 (1962).

V. Finding no reversible error, we affirm the judgment against defendant.

AFFIRMED.