**STATE of Iowa, Appellee,**

v.

**Estell (NMN) WALTON, Appellant.**

No. 59042.

Supreme Court of Iowa.

Dec. 15, 1976.

Kjas T. Long, of Charles F. Hinton, Jr., Law Firm, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Heard by MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

McCORMICK, Justice.

Defendant Estell Walton appeals his conviction and sentence for second-degree murder in violation of § 690.3, The Code. We reverse because we find merit in two of his six assignments of error. We hold the trial court erred in failing to conduct a hearing to determine the admissibility of statements of defendant and in overruling his hearsay objection to a hospital record.

This appeal is the latest chapter in the State's effort to prosecute defendant for the alleged murder of Henry Collins. He was brought to trial once before, but the trial was interrupted by a competency proceeding because of doubts about defendant's sanity raised during the trial. A jury found him competent to stand trial, and thereafter he tendered a guilty plea, resulting in a conviction and sentence for second-degree murder. He appealed and we reversed because the record showed an unresolved reasonable doubt as to his competency to plead guilty. See *State v. Walton,* 228 N.W.2d 21 (Iowa 1975).

After remand, defendant elected to plead not guilty and go to trial again. As a result of this trial, he was convicted of second-degree murder and sentenced to life imprisonment. This appeal followed.

Because we reverse on evidentiary rulings, we need not detail all of the facts. However, a brief outline will help fix the context in which the challenged evidentiary rulings were made.

In August 1972, defendant and Henry Collins argued over ownership of a five dollar bill discovered by them at about the same time on a sidewalk in front of a Waterloo bar. Henry Collins took the money over defendant's protest.

About one week later defendant had an altercation with Collins in the Keg tavern in Waterloo arising from defendant's claim to the five dollars. A girl friend of Collins and a third person may have been involved. Defendant subsequently contacted law enforcement officials on several occasions in an effort to get them to intervene in some way in his dispute with Collins. The officials did not involve themselves in the matter.

Shortly before 1:00 a. m. on Sunday October 1, 1972, defendant was in the Keg tavern drinking beer when Henry Collins and his girl friend entered. Defendant left the

tavern, went to his automobile parked nearby, removed a rifle from the vehicle, loaded it, and returned with it to the tavern. He walked through the door, raised the weapon, and shot Collins in the side from a distance of several feet. Then he walked to where Collins had fallen, stood over him, and fired a second shot into his head. Collins was dead at the scene.

Defendant left the tavern and went home where he was arrested at about 3:00 a. m. After being taken to the police station he was interrogated by Captain Frank Bemisdarfer in the presence of an FBI agent. After being orally advised of his *Miranda* rights, defendant made certain alleged oral admissions in response to questioning by Captain Bemisdarfer. Then he executed a written waiver of his *Miranda* rights and, upon further interrogation, made an alleged oral confession which was recorded by a court reporter. The court reporter's transcript shows the interrogation started with this exchange:

Q. You know we are not violating your rights in any way, you understand that? A. Thank you.

At the conclusion of the interrogation, the following colloquy occurred:

Q. I want you to tell us we haven't mistreated you in any way. A. Not yet you haven't.

Q. We are not going to, and we have no reason to and I think you have known me long enough to know I haven't and I am not going to. A. Thank you.

Q. We don't want you or your brother to say we did mistreat you because you are going to get help and you are going to get what help the courts feel you have coming. A. Thank you.

The interrogation then ended.

The county attorney called Lloyd Spencer, a Waterloo psychiatrist, to the police station at about 9:00 a. m. to examine defendant. Dr. Spencer testified at trial as a defense witness. He said he believed from his examination of defendant that when he shot Collins defendant was acting under a schizophrenic delusion that Collins was going to kill him.

The defense was predicated on a claim of insanity. The State sought to show defendant was calm when he shot Collins and lucid when interrogated later. The defense offered evidence that defendant was agitated at the time of the shooting and acted in a manner consistent with his psychosis when interrogated later. Considerable evidence was introduced by both parties regarding defendant's mental condition. It was the main issue at trial.

I. *Failure of the trial court to hold a Jackson v. Denno hearing.* Defendant objected during trial to the admissibility of the statements he made during interrogation. However, he did not request a hearing out of the presence of the jury in which the admissibility of those statements could be determined. The trial court simply overruled defendant's objections without conducting such a hearing. Defendant, represented now by different counsel, contends the court erred in failing to hold a hearing on the issue of admissibility of the statements. In resistance the State asserts defendant's objections were inadequate to raise issues of admissibility requiring a hearing.

After the jury was impaneled but before commencement of the State's evidence, the trial court met with counsel to discuss waiver of defense foundation objections to certain State exhibits, many of which had been used in the first trial. When exhibit X, the court reporter's transcript of defendant's alleged confession, was discussed, defense counsel said:

We would object to exhibit X, Mr. Walton's statement, on the grounds that at the time he gave the statement he was not able to understand the nature and quality of giving the statement, that while the statement refers [to the fact] * * * that he was read orally his rights, his answer of "Thank you" when [the officer] said that we are not violating your rights indicates that Mr. Walton did not understand the nature of his rights, and as such it violates his right to remain silent under the fifth amendment

[of] the Constitution and under the statutes of the State of Iowa.

The court made no ruling at that time.

At trial, when Captain Bemisdarfer was asked to relate defendant's oral statements, the following colloquy occurred:

Defense counsel: Your honor, I am going to object to this as being a violation of defendant's rights. There is no showing that he understood the nature and quality of the warning, and it's a violation of [the] fifth amendment and fourteenth amendment and I think it's * * * Article I, section 6, of the [Iowa Constitution].

The Court: Do you want that objection to stand to this line of questioning?

Defense Counsel: Yes. * * *

The Court: All right. The objection may precede each question in this line of interrogation, and I will overrule it and permit the answers.

When exhibit X was offered, defendant repeated his objection, and the trial court overruled it. Defendant also made substantially the same objection when the written *Miranda* waiver was offered as an exhibit.

■ Contrary to the position taken by the State, we find that defendant's objections were sufficient to challenge admissibility of his statements by raising issues regarding the validity of his purported waiver of *Miranda* rights and their voluntariness. *State v. Cooper,* 217 N.W.2d 589, 594–595 (Iowa 1974). Therefore we must decide whether the trial court erred in failing to hold a hearing to resolve the issues raised by the objections.

■ We have consistently held that when issues are raised regarding the validity of a *Miranda* waiver and voluntariness of alleged inculpatory statements resulting from custodial interrogation, the defendant is entitled to a fair hearing out of the presence of the jury at which both the underlying factual issues and the legal issues "are actually and reliably determined." *State v. Cooper, supra,* at 593; see *State v. Holland,* 258 Iowa 206, 214–216, 138 N.W.2d 86, 90–91 (1965).

This right stems from the decision of the United States Supreme Court in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). There the Court held:

"* * * [A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession * * *. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." 378 U.S. at 376–377, 84 S.Ct. at 1780–1781, 12 L.Ed.2d at 915–916.

In a *Jackson* hearing the State must prove by a preponderance of evidence that the alleged confession was made by the defendant after an effective waiver of his *Miranda* rights and that it was voluntary. These are separate issues although the concept of voluntariness is involved in both. *State v. Swanson,* 228 N.W.2d 101, 104–105 (Iowa 1975).

An understanding of the dimensions of the right is a necessary prelude to resolution of the present dispute. Those dimensions are defined in *Gladden v. Unsworth,* 396 F.2d 373, 376–377 (9 Cir. 1968), as follows:

"The precise constitutional right in question here is not * * * the right to exclude from evidence a confession or admission not voluntarily given. Rather it is the right to exclude from evidence a confession or admission which, upon being challenged as involuntary, has not first been determined by the trial court to be voluntary in a hearing conducted outside the presence of the jury."

The accuracy of this analysis is confirmed in *Boles v. Stevenson,* 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964), *Sims v. Georgia,* 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), and *Sigler v. Parker,* 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970).

In *Boles* the Supreme Court held that when a defendant has not been accorded an adequate hearing upon the voluntariness of

a confession whose admissibility he challenges, "he is entitled to a [full] hearing in the state courts under appropriate procedures and standards designed to insure a full and adequate resolution of this issue." 379 U.S. at 45, 85 S.Ct. at 176, 13 L.Ed.2d at 111. In *Sims* the Court held that a jury may not hear a challenged confession until the trial judge has determined it has been freely and voluntarily given. Although the judge need not make formal findings of fact or write an opinion, "his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." 385 U.S. at 544, 87 S.Ct. at 643, 17 L.Ed.2d at 598. In *Parker* the Court agreed with the finding of the court of appeals that a mere trial court statement overruling a defendant's appropriate objection to the admission of a confession is not the "reliable determination" of the voluntariness issue required by *Jackson v. Denno, supra.* 396 U.S. at 483, 90 S.Ct. at 668, 24 L.Ed.2d at 674; *cf. Parker v. Sigler,* 413 F.2d 459, 462 (8 Cir. 1969).

■ This means that when a defendant makes an appropriate objection to the admissibility of an alleged confession, the trial court even though not requested to do so must conduct an evidentiary hearing outside the presence of the jury and make the requisite findings and determination. *Mullins v. United States,* 382 F.2d 258 (4 Cir. 1967); *Fisher v. United States,* 382 F.2d 31 (5 Cir. 1967); *Reizenstein v. Sigler,* 428 F.2d 702 (8 Cir. 1970); *Gladden v. Unsworth, supra.*

Some courts have held that in certain circumstances a trial judge must as a matter of due process conduct such a hearing on his own motion in the absence of an objection. For example, in *United States v. Taylor,* 374 F.2d 753, 756 (7 Cir. 1967), the court said:

"Certain alerting circumstances such as a defendant's apparent abnormal mental or physical condition, obvious ignorance, or lack of awareness—all of which may reveal a dereliction in defense counsel's failure to object to the introduction of a confession—may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection."

See *United States v. Silva,* 418 F.2d 328 (2 Cir. 1969); *United States v. Inman,* 352 F.2d 954 (4 Cir. 1965); *Hizel v. Sigler,* 430 F.2d 1398 (8 Cir. 1970); *Gerberding v. United States,* 471 F.2d 55 (8 Cir. 1973).

In the present case, defendant had a history of mental illness, was found before trial by a state psychiatrist to have an I.Q. of 51, and was said by psychiatrists on both sides to be seriously psychotic. However, we need not decide whether the trial court was obliged to hold a hearing on the admissibility of his statements in the absence of an objection because we find appropriate objections were made.

We hold that the trial court erred in the face of such objections in failing to conduct an evidentiary hearing and make requisite findings of fact and a reliable determination of the validity of defendant's alleged *Miranda* waiver and the voluntariness of his statements.

II. *Admission of the hospital record.* Defendant also attacks a trial court ruling admitting an exhibit represented by the State to be a copy of a report of hospitalization of defendant in the mental health institute at Independence in 1964. In tracing the history of defendant's mental illness, a defense witness testified defendant had been committed there after suffering a serious mental breakdown accompanied by convulsions. The State sought to use the exhibit as rebuttal, apparently because it contained the following statements:

* * * It was also interesting to note that during admission this patient was accompanied by a group of relatives. While the patient was signing his voluntary application in front of many relatives, it was noted by the admitting physician that the patient was shaking all over his body, which appeared to be convulsive in nature. However, the patient was conscious. When the relatives were gone and the admitting physician proceeded with the interview, the entire clin-

ical picture of body movements—shaking his hands, difficulty in signing his voluntary application—changed suddenly to one of calmness, firmness, and being cooperative.

The county attorney made his initial offer of the exhibit out of the presence of the jury. The offer was not supported by any identification or foundation testimony. Defendant objected to the offer in part on the grounds of hearsay and absence of foundation. The trial court sustained the objection. A few moments later the court reversed its ruling, over defendant's renewed objection, and admitted substantial portions of the exhibit including the part quoted above. It appears the court mistakenly believed the exhibit was one of those to which defendant had waived any foundation objection in the discussion at the beginning of the trial. However, careful review of the transcript shows this exhibit, marked State exhibit XX, was not among those discussed on that occasion. The exhibits considered then were State exhibits A through Z and AA through KK.

In opposing this assignment of error, the State contends defendant's objection was inadequate to preserve error. We do not agree. Defendant's objection invoked the hearsay rule, and the exhibit was plainly hearsay. See *State v. Miller,* 204 N.W.2d 834, 840–841 (Iowa 1973).

We have recognized that hospital records are admissible in criminal cases under an exception to the hearsay rule once proper foundation is laid like that required for business records under Code § 622.28. *State v. Fisher,* 178 N.W.2d 380 (Iowa 1970), and citations; see *In re Estate of Poulos,* 229 N.W.2d 721, 727 (Iowa 1975). No such foundation was laid here, and the exhibit was inadmissible.

The trial court erred in overruling defendant's hearsay objection to the exhibit.

III. *Other assignments of error.* Of defendant's four remaining assignments of error, only one involves a problem which may recur on retrial. It relates to defendant's contention that he was entitled to a directed verdict at the close of the evidence because of insufficiency of the State's evidence on the issue of defendant's sanity. We believe the evidence was sufficient for jury consideration. See *State v. Snethen,* 245 N.W.2d 308, 316 (Iowa 1976). Although defendant maintains he successfully impeached the State psychiatrist who testified he was sane within the meaning of the M'Naghten standard at the time of the shooting, the weight of the doctor's testimony was for the jury. The trial court did not err in overruling defendant's motion for directed verdict on this ground.

Our holdings in divisions I and II require reversal.

REVERSED.