STATE of Iowa, Appellee,

v.

George Edward WASHINGTON,
Appellant.

No. 59762.

Supreme Court of Iowa.

Sept. 21, 1977.

Rehearing Denied Nov. 17, 1977.

Gerald J. Kucera, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., J. Susan Carney, Asst. Atty. Gen., and Eugene J. Kopecky, County Atty., Cedar Rapids, for appellee.

REYNOLDSON, Justice.

A Linn County jury found George Edward Washington guilty of burglary, a violation of § 708.1, The Code. Following judgment sentencing him to imprisonment for a term not to exceed 20 years, he appeals here. We affirm.

The State's evidence disclosed at about 3:30 a. m. on March 31, 1976, two patrolling Cedar Rapids policemen received a call to investigate a vehicle in an alley near the

1800 block of Grand Avenue. The parked car contained several household items. Suspecting a break-in was in progress, the officers retreated to keep watch. Soon the car was driven off at high speed. The officers' chase ended when the pursued vehicle struck two garages and the driver ran away.

Within a few minutes David Spieker, driving his pickup in the 1800 block on a nearby street, saw a running and staggering man about a block and a half away. Spieker eventually drove to within three or four feet of him on the driver's side of his pickup. He observed the man to be "about medium height, medium weight, short curly hair, negro, light complexion, purple top, shirt or coat, I couldn't remember which, dark slacks." He reported this to officers who were searching in the neighborhood.

Ownership of the abandoned car was traced to Joyce Spaight, with whom defendant had been living. Her apartment was located approximately two and one-half miles from where her car was found. About 45 minutes after the chase, two police officers arrived at the Spaight apartment. She gave them consent to search. Defendant, out of breath and shoeless, was found on the floor in a room being used for storage. A purple jacket was at his side.

Defendant was arrested and taken to the Cedar Rapids police station. Spieker there observed and identified him as the man he had seen running.

The personal property found in the Spaight car belonged to the Gables, who lived near the place the car was first observed. Their home had been burglarized.

George W. Gable testified he was industrial agent manager for Cryovac, where defendant formerly had been employed. Gable had conducted the grievance procedure for management when defendant was fired. Defendant at the time had told Gable he would "get even" with him.

Under circumstances detailed in division III, defendant, later on the morning of the burglary, orally confessed to two Cedar Rapids detectives.

At trial defendant testified he had driven the Spaight car to a tavern and left the keys in the switch so he wouldn't lose them if he got drunk. He later found the car missing and was told an acquaintance had taken it. He spent time looking for the vehicle and finally was taken to the Spaight home by a person named Bernard. He arrived there just before the police. Defendant testified he was not wearing a purple shirt or jacket at the time of his arrest and didn't own such a garment.

On this appeal defendant asserts trial court erred 1) in not allowing defendant to show he had been acquitted of other charges referred to by a State's witness on direct examination, 2) in permitting an in-court identification of defendant following an improper police station showup, and 3) in permitting evidence of a confession which previously had been ruled inadmissible.

I. *Issue relating to showing disposition of other charges.*

State's lead witness, Officer Kinkead, testified on direct examination Spieker reported and described the running man to him, "and I put out an attempt to locate for that subject that he described." The following examination ensued:

"Q. What did you do then? A. We * * * checked the area a bit more and assumed he had escaped so we went back and handled the hit and run reports that were made from the garages being struck.

"Q. What happened after you did the hit and run reports? A. Well, during doing that we checked on the vehicle registration and found it to be a Joyce Spaight. * * *."

This was the sole reference to any other possible lawbreaking by defendant.

But on cross-examination defense counsel developed through this officer the latter filed two hit and run charges against defendant based on damage to the two garages. By three different questions defendant sought to show the disposition of those charges. Each time trial court sustained the State's objection that the evidence sought was irrelevant.

We may infer disposition of these related charges was favorable to defendant, although no offer was made to show what the answers to the questions would have been.

When evidence of another crime is admitted through an exception to the usual exclusion rule, most jurisdictions permit the accused to show he or she was acquitted of that charge. *People v. Griffin*, 66 Cal.2d 459, 466, 58 Cal.Rptr. 107, 111, 426 P.2d 507, 510–511 (1967); *Womble v. State*, 8 Md. App. 119, 125, 258 A.2d 786, 789–790 (1969); *State v. Smith*, 271 Or. 294, 298–299, 532 P.2d 9, 11–12 (Or.1975); see 1 Wharton's Criminal Evidence § 262, at 625 (1972); Annot., Evidence—Other Offense—Acquittal, 86 A.L.R.2d 1132 (1962).

*State v. Leahy*, 243 Iowa 959, 967, 54 N.W.2d 447, 452 (1952), indicates Iowa would adopt the majority rule permitting such evidence. In *Leahy* defendant was charged with assault with intent to do great bodily harm. This charge arose out of an incident in which defendant, taken to the police station, pointed a gun at a detective. Defendant was at the station because his wife had been wounded by a bullet from defendant's gun an hour earlier. Although trial court sustained an objection to a question which sought to disclose defendant was tried and acquitted on an indictment for shooting his wife, this evidence came in later. However, the *Leahy* court observed, "[w]ith all of the testimony introduced by the state with regard to this [the wife's] shooting there should have been no hesitation on the part of the trial court to allow defendant to show it was without criminal liability."

In the case before us, had the State elicited testimony concerning the hit and run charges, trial court would have been in error in not permitting defendant to prove a favorable disposition. But here the unsolicited reference by the officer to hit and run reports did not connect defendant to any criminal charge for hit and run. Defendant's own examination first touched on the other charges.

■ The rule invoked in *State v. Hinkle*, 229 N.W.2d 744, 750 (Iowa 1975), applies here:

"[A] party to a criminal proceeding will not be permitted to complain of error with respect to the admission or exclusion of evidence where * * * he himself has acquiesced in, committed, or invited the error."

Charged with one offense, defendant should not be permitted to show other offenses and then establish his acquittal of them.

Defendant, on this assignment, suffers from a self-inflicted wound. We find no error.

## II. *Issue of defendant's identification following police station showup.*

Defendant contends it was error to permit in-court identification of defendant by witness Spieker, alleging taint by a previous, improper out-of-court showup.

Within an hour after Spieker reached home after describing the man he observed to the officers, he complied with a telephone request to go to the police station. He stood at the front desk "and they led a man through upstairs to ask me to identify to see if this was the man I saw running." Only one person was exhibited to Spieker. He identified that man as the one he had seen earlier. Cross-examination developed one of the escorting policemen was carrying a purple jacket.

Spieker identified defendant in court as the person he observed running and staggering near the scene of the abandoned car. Upon cross-examination he denied his police-station observation of defendant "re-enforced" his in-court identification. He testified he remembered defendant's facial features from his first observation of him, even though he did not observe at that time whether the purple garment was a shirt or jacket.

Principles applicable in these identification situations recently were collected in *State v. Ash*, 244 N.W.2d 812, 814 (Iowa 1976), and will not be repeated here.

■ The relevant due process test prohibits identification testimony where the

confrontation conducted is "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967).

Every such one-on-one confrontation is "suggestive." See *State v. Salazar,* 213 N.W.2d 490, 493 (Iowa 1973) and citations. But we consistently have recognized the type of procedure used here, while suggestive, is not unnecessarily suggestive in view of substantial countervailing policy considerations. *State v. Wisniewski,* 171 N.W.2d 882, 885 (Iowa 1969); see *Russell v. United States,* 133 U.S.App.D.C. 77, 81, 408 F.2d 1280, 1284 (1969), cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); *State v. Emery,* 230 N.W.2d 521, 524 (Iowa 1975); *Williamson v. State,* 201 N.W.2d 490, 491 (Iowa 1972); *State v. Smith,* 182 N.W.2d 409, 411 (Iowa 1970).

The United States Supreme Court rejected the *"per se"* approach which requires exclusion of out-of-court identification evidence without regard to reliability, whenever it has been obtained through unnecessarily suggestive confrontation procedures. Instead the Court adopted an *ad hoc* approach which admits the evidence if, despite the suggestive aspect, the out-of-court identification possesses certain features of reliability. *Manson v. Brathwaite,* —— U.S. ——, ——, 97 S.Ct. 2243, 2250, 53 L.Ed.2d 140, 150 (1977).

■ In our consideration based on the totality of circumstances, *Ash,* supra, 244 N.W.2d at 814, we find the requisite degree of reliability in the out-of-court identification disclosed by this record. Additionally, we hold there was an independent origin for Spieker's in-court identification of defendant. His testimony is strong that his identification was based on observations of defendant in the street, not in the police station.

### III. *Issue relating to confession.*

Defendant made a pre-trial motion to suppress evidence of certain statements alleged to be made to two detectives concerning his involvement in the burglary. The motion merely asserts the "alleged statements were made in violation of the Defendant's rights under the 4th, 5th, 6th, and 14th Amendments to the Constitution of the United States, under Article I, Section A [sic, Section 8] of the Constitution of the State of Iowa."

A suppression hearing was held. The evidence related to the issue whether defendant was accorded his *Miranda* rights. A detective testified he and another officer were directed to question defendant about some armed robberies later in the morning of the burglary. They read aloud a *Miranda*-waiving paper submitted for defendant's signature, but the latter said he wouldn't sign anything. According to the detective, defendant stated he understood his rights, never indicated he wanted to call a lawyer, and never refused to answer their questions. In the course of this questioning the burglary came up.

Defendant testified he read the waiver form, then said he wanted a lawyer, but the detectives refused to permit him a telephone call.

■ Although defendant testified he was interviewed twice rather than once as the detective had testified, there is little in the suppression hearing evidence which would have alerted trial court the defense was raising a voluntariness issue. Trial court's pretrial ruling suppressing evidence of defendant's statement was posited squarely on the State's failure to carry its burden to prove defendant waived his *Miranda* rights. This foreclosed use of the statements on the State's evidence in chief, but not for impeachment purposes. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The prosecution made no effort to introduce evidence of defendant's admissions to the detectives on its case in chief. But after defendant testified to his noninvolvement in the burglary, the prosecutor sought to cross-examine him concerning those prior statements. Defense counsel objected on the ground "this Court has ruled those statements may not be used, inadmissible at the time of trial." The court ruled,

"*On direct.* You may answer his questions, Mr. Washington, whatever he asks. You answer unless there is an objection that is sustained." (emphasis supplied)

Defendant denied he had admitted committing the burglary. One of the detectives, called on rebuttal, testified without objection defendant said he had broken into the Gable home.

Defendant, represented by a different counsel on appeal, concedes, "[T]he wording of the Motion to Suppress is not specific regarding whether admissibility or voluntariness should have been decided." Nonetheless, defendant asserts alternatively 1) if the court's ruling was based in part on involuntariness the trial objection should have been sustained, 2) if the court did not rule on voluntariness it committed error as the admission could only be introduced upon such foundation, and 3) if the court's ruling was that the admissions were voluntary we should reach the opposite result upon considering the totality of the circumstances.

■ Upon proper objection or motion the State is required to prove by a preponderance of evidence that defendant's statements sought to be introduced as evidence in chief against him were made after an effective waiver of his *Miranda* rights, and were made voluntarily. See, e. g., *State v. Iowa District Court,* 236 N.W.2d 54, 55–56 (Iowa 1975); *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975). These are separate issues. *State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976); *State v. Hilpipre,* 242 N.W.2d 306, 309 (Iowa 1976). There is a logical inference in the federal decisions that coerced or involuntary statements may not be used for impeachment purposes. *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570, 578 (1975); *Harris v. New York, supra,* 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed.2d at 4.

■ But defendant's alternative-error analysis ignores several basic principles. Absence of a timely objection is a waiver of the right to suppress evidence. *State v. Bash,* 214 N.W.2d 219, 221 (Iowa 1974); *State v. Boose,* 202 N.W.2d 368, 369 (Iowa

1972). Matters not raised in trial court, including constitutional questions, may not be effectively asserted for the first time on appeal. *State v. Pardock,* 215 N.W.2d 344, 347 (Iowa 1974). Every ground of exception which is not particularly specified is to be considered as abandoned. *State v. Droste,* 232 N.W.2d 483, 487 (Iowa 1975). One attempting to exclude evidence, whether by objection or motion, has a duty to indicate the specific grounds so as to alert the court to the question raised and enable opposing counsel to take proper corrective measures to remedy the defect, if possible. *State v. Williams,* 207 N.W.2d 98, 110 (Iowa 1973). When this is not done, there is no proper basis for reversal unless the grounds of the objection are obvious. *State v. Grady,* 183 N.W.2d 707, 719 (Iowa 1971).

■ Of course, proof of *Miranda* admissibility and voluntariness comprises an appropriate foundation for introduction into evidence of statements like those before us. But if this evidence is sought to be elicited without laying proper foundation, it is the obligation of defendant to assert such defect, specifically pointing out the fatal flaw. The State is obligated to assume its burden to prove voluntariness only when the statements or confession are challenged as involuntary. See *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972); *State v. Alford,* 260 Iowa 939, 943, 151 N.W.2d 573, 575 (1967). The United States Supreme Court has rejected defendant's contention a *Jackson v. Denno* (378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 [1964]) hearing on voluntariness of a confession is required even though a defendant does not object to its admission. *Wainwright v. Sykes,* —— U.S. ——, ——, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594, 606 (1977); see *Francis v. Henderson,* 425 U.S. 536, 541–542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149, 154–155 (1976).

■ We hold defendant's burden to object with specificity was not met by the dragnet-type objection urged in his motion to suppress. Reference to several constitutional provisions, each containing a number of safeguards, would neither alert trial court to the question raised nor adequately

inform the prosecutor so the required foundational evidence could be supplied.

Trial court apparently surmised the suppression motion was grounded on *Miranda* admissibility, not voluntariness. The evidence had little bearing on voluntariness. The court's later interpretation of its suppression ruling as effective only "on direct" (State's case in chief) signalled the prior ruling was based on admissibility only. Yet defendant never made a trial objection on the basis his statements were coerced or involuntary.

We hold the error, if any, was waived.

Judgment of district court is affirmed.

AFFIRMED.

MOORE, C. J., and LeGRAND, REES, UHLENHOPP, and HARRIS, JJ., concur.

McCORMICK, MASON and RAWLINGS, JJ., dissent.

McCORMICK, Justice (dissenting).

I am unable to agree with division III and the result. The holding is inconsistent with prior decisions of this court and well-reasoned decisions of other courts. It relieves the State of its duty to establish a foundation for admissibility of the defendant's statements and excuses the trial court from its duty to make a determination of the voluntariness issue without a tenable basis for doing so.

Here the defendant made a pretrial motion to suppress his alleged oral statements to two detectives. He invoked the fifth, sixth and fourteenth amendments of the United States Constitution. The trial court held a hearing on the motion.

Defendant testified he had not slept the night before his arrest. He was arrested at approximately 4:30 a.m. and placed in the Linn County jail at 5:00 or 5:30 a.m. Still without sleep, he was removed from the jail at 7:00 or 7:30 a.m. and taken to the city police station for interrogation. He testified he asked for a lawyer and permission to make a phone call and both requests were denied. Despite his refusal to sign the *Miranda* waiver form, he was interroga-

ted extensively on at least two occasions by two officers over a five-hour period. There was considerable coming and going by the officers. The defendant thought they were watching him through a one-way mirror when they were not in the room with him. Even though one of the detectives testified defendant admitted the present offense as a result of this interrogation, the officer also said, "He didn't supply any details at all."

After this hearing the trial court entered a ruling sustaining the motion to suppress. It is possible to read the ruling as the majority does and conclude the suppression order was based solely on a finding the State did not meet its burden to prove defendant waived his *Miranda* rights. Nevertheless, the court cited *State v. Winfrey*, 221 N.W.2d 269 (Iowa 1974) as the source of applicable principles. *Winfrey* involved a traditional voluntariness question rather than a *Miranda* challenge.

In any event, two facts are indisputable. One is that the trial court did not find the State met its burden to prove voluntariness. The other is that the ruling purported to conclude the issue of admissibility for any purpose. The court ordered "that any statements made by the defendant to Detectives Ammeter and Millsap during an in-custodial interrogation *will not be admissible at the trial.*" (Emphasis supplied). The admissibility of the statements for impeachment was first mentioned by the trial court when defense counsel cited the court's ruling in objecting to their use by the State in cross-examination of defendant. Even at that point the court did not rule that the statements were voluntary.

One of the contentions of defendant is that if the trial court did not rule on voluntariness it committed error because the statements could be used in impeachment only upon proof and finding of voluntariness. As I understand the majority opinion, it acknowledges the accuracy of the principle asserted but holds it is inapplicable because defendant's motion to suppress was not specific enough to raise the voluntariness issue. I do not agree.

At this late date I do not believe it is reasonable to say a motion to suppress an alleged confession in which the fifth and fourteenth amendments are invoked is insufficient to allege involuntariness. Voluntariness and *Miranda* challenges occur routinely in almost every case in which the State proposes to use a defendant's alleged admissions as evidence. One might well speculate regarding the competency of a lawyer who does not raise these issues. Trial judges expect motions to suppress and regularly address them in advance of trial.

We have explained the test of sufficiency of an objection as follows:

> Because the function of an objection is to invoke a rule of evidence to regulate admission of proof at trial, it is sufficient if it alerts the trial court to the principle sought to be invoked. "In determining the formal sufficiency of an objection, it is enough if the substance of the defective feature of the evidence offered is made clear by any choice of language. Care must be taken that the objection strike at the very heart of the infirmity." [citation]. *State v. Nimmo,* 247 N.W.2d 228, 231 (Iowa 1976).

One who invokes the fifth and fourteenth amendments in a state prosecution at the very least asserts his right against compulsory self-incrimination. Motions to suppress alleged admissions are routine, frequent and fundamental. It is incredible to suggest that a trial judge confronted with such a motion, in which violations of the fifth and fourteenth amendments of the United States Constitution are alleged, should not be charged with knowing a voluntariness challenge is involved.

We have upheld the sufficiency of a far more general allegation. In *State v. Cooper,* 217 N.W.2d 589, 594–595 (Iowa 1974), the defendant moved to strike admissions on the ground the interrogator had "* * * deprived the defendant of his constitutional rights as to the offense and the reason he was being questioned." We said:

> * * * Given the specific reference to * * * [the interrogator's] testimony and to the nature of the testimony as "admissions" and that "constitutional rights" were infringed, the motion sufficiently alerted the court that defendant's right against self-incrimination was involved. 217 N.W.2d at 594.

In a more recent case, *State v. Walton,* 247 N.W.2d 736, 738–739 (Iowa 1976), we held objections on grounds similar to those in the motion here were sufficient to raise issues regarding the validity of the purported waiver of *Miranda* rights and voluntariness. Neither of the defendant's two objections in *Walton* expressly referred to voluntariness. In a pretrial objection the defendant alleged violation of his right to remain silent under the fifth amendment. The trial court did not rule on this objection. In an objection at trial the defendant alleged there was "no showing that he understood the nature and quality of the [*Miranda*] warning, and it's a violation of [the] fifth and fourteenth amendment * * *." The trial court overruled this objection without holding a hearing. In reversing, we held the objections sufficiently raised *Miranda* and voluntariness issues. 247 N.W.2d at 739. ("Contrary to the position taken by the State, we find that defendant's objections were sufficient to challenge admissibility of his statements by raising issues regarding the validity of his purported waiver of *Miranda* rights and their voluntariness.").

The holdings in *Cooper* and *Walton* reflect our agreement with a principle expressed in *Blair v. United States,* 130 U.S. App.D.C. 322, 326, 401 F.2d 387, 391 (1968), as follows:

> * * * Where the question is as fundamental as admissibility in a criminal trial of a pre-trial statement by a defendant, counsel may properly assume that even a brief objection presenting the essence of his contention will receive the considered attention of the trial judge without need for a detailed particularization and citations.

Other authorities are in accord. See *Evalt v. United States,* 359 F.2d 534, 542 (9 Cir. 1966); *Dupes v. Johnson,* 353 F.2d 103 (6 Cir. 1965); *Griffith v. State,* 116 Ga.App.

429, 157 S.E.2d 894, 895 (Ga.App.1967) ("Objections to confessions, almost regardless of in what language couched, raise the issue of voluntariness * * *."); *Kidd v. State,* 33 Md.App. 445, 366 A.2d 761 (1976); *State v. Vickers,* 274 N.C. 311, 163 S.E.2d 481 (1968).

We have not thought it necessary to be any more specific ourselves when identifying the authority for suppression of involuntary statements. For example, in *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975), we said, "[D]efendants involuntary oral and written statements were obtained from him in violation of his constitutional rights guaranteed by Amendments 5 and 14 of the United States Constitution." We did not pinpoint the specific provisions of the amendments upon which we relied but left no doubt those amendments were authority for the involuntariness determination. We should not expect more of this defendant than we demand of ourselves.

Faced with a problem much like that in this case, the Maryland court in *Kidd v. State,* 33 Md.App. 445, 366 A.2d 761 (1976), rejected a claim by the state that an objection which would have been sufficient to raise a voluntariness issue prior to *Miranda* was inadequate thereafter. After analysis of the traditional voluntariness and *Miranda* issues, the court said:

Nor do we see anything logically persuasive in the suggestion by the State that the appellant must specify that he is objecting on the grounds of traditional involuntariness before he is entitled to a hearing on that issue. Although the case law, here and elsewhere, has of late been almost totally monopolized by *Miranda* considerations, the more basic criteria have not been superseded or obliterated. When a defendant objects to a statement offered against him in chief, he is not required to specify that he is objecting on basic constitutional grounds rather than objecting exclusively upon *Miranda* grounds. 366 A.2d at 775.

The majority opinion obscures the fact that *Miranda* merely added a prophylactic procedural mandate to the traditional constitutional requirement of voluntariness.

Admissions of a defendant made during custodial interrogation cannot be received over his objection unless the State establishes they were made voluntarily after compliance with *Miranda* and waiver by the defendant of his *Miranda* rights. *State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976). However, voluntariness is an element of waiver. Thus, although the issues of *Miranda* waiver and voluntariness of admissions are distinct, "the concept of voluntariness is involved in both." *State v. Walton,* 247 N.W.2d at 739.

Furthermore, because the voluntariness question inheres in both issues, the same evidence will generally be relevant in determining them. The Supreme Court summarized relevant evidence bearing on the voluntariness test in *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862 (1973):

In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, e. g., *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; his lack of education, e. g., *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; or his low intelligence, e. g., *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246; *the lack of any advice to the accused of his constitutional rights,* e. g., *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895; *the length of detention,* e. g., *Chambers v. Florida,* supra; *the repeated and prolonged nature of the questioning,* e. g., *Ashcraft v. Tennessee,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; and the use of physical punishment such as the *deprivation of food or sleep,* e. g., *Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948. In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how

the accused reacted. *Culombe v. Connecticut,* supra, at 603, 367 U.S. 81 S.Ct. at 1879, 6 L.Ed.2d 1037. (Emphasis supplied).

In the present case, the trial court sustained defendant's motion to suppress after finding the State did not meet its burden to show he waived his *Miranda* rights. Of course the same evidence would not compel as a matter of law a finding the statements were also involuntary under the traditional standard. Nevertheless, examined in its light most favorable to defendant, the evidence would not justify a finding that the State as a matter of law met its burden to prove the statements were voluntary.

It is well settled that when alleged admissions of a defendant during custodial interrogation are challenged as involuntary, the defendant is entitled to a fair hearing out of the presence of the jury at which the factual and legal issues are actually and reliably determined. *State v. Cooper,* 217 N.W.2d 589, 593 (Iowa 1974). As a condition to admissibility, the trial court's conclusion that the admissions are voluntary "must appear from the record with unmistakable clarity." *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967). Under *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), a *Miranda* violation may result in otherwise voluntary admissions being inadmissible during the State's case in chief but admissible for impeachment. Therefore the trial court "should make a determination for the use of such evidence, both in chief and for impeachment, * * *." *Wold v. State,* 57 Wis.2d 344, 204 N.W.2d 482, 490 (Wis.1973).

Because I believe the defendant's motion to suppress was adequate in the present case to raise the traditional voluntariness issue as well as the *Miranda* question, and the voluntariness issue was not decided by the trial court as required, I would hold the trial court erred in receiving evidence of the statements for impeachment purposes. The error is compounded by the purported scope of the pretrial ruling, plainly holding the statements inadmissible at trial. It is strange that under this record the defendant is somehow deemed to have waived his right to object to use of the statements for impeachment. The effect of the majority holding is to circumvent the fundamental constitutional right of the defendant to require the government to establish the requisite foundation for admissibility and to obtain a reliable and unmistakably clear trial court ruling on the issues involved. This defendant has been denied elementary fair play.

I would reverse and remand for determination of the voluntariness issue and for new trial.

MASON and RAWLINGS, JJ., join in this dissent.