STATE of Iowa, Appellee,

v.

Dennis Eugene FISHER, Appellant.

No. 61002.

Supreme Court of Iowa.

Aug. 29, 1979.

Victor V. Sprengelmeyer of Sprengelmeyer & Henkels, Dubuque, for appellant.

Thomas J. Miller, Atty. Gen., and Faison T. Sessoms, Jr., Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, HARRIS, and ALLBEE, JJ.

LeGRAND, Justice.

Defendant was convicted by a Delaware County jury of having committed perjury while testifying at a sentencing hearing on his plea of guilty, later withdrawn, to having murdered Howard Miller. He appeals, and we affirm.

The history of this case dates back to 1975 and includes a murder conviction, which was reversed on appeal, and a remand for new trial. *State v. Fisher,* 246 N.W.2d 918 (Iowa 1976).

After remand, defendant pled guilty to the murder. He requested permission to testify before being sentenced. We set out the statement made by the trial court in granting defendant's request:

Let the record show that this court is now taking up matters concerning . . *State of Iowa v. Dennis Eugene Fisher*

. . .. The defendant through his attorney, Mr. Goen, has asked for an opportunity to present evidence . . . prior to the time that sentence is pronounced. That opportunity has been granted by order of this court, and at this time the court will allow the defendant to put such evidence into the record.

The defendant was then sworn and gave testimony which the state claims was perjurious. Although this hearing was for sentencing only, it soon became apparent defendant was asserting his innocence and that he wanted to withdraw his guilty plea. The court permitted him to do so. Later, he stood trial and was again convicted of Mr. Miller's murder. This conviction recently withstood an appeal. *See State v. Fisher*, 279 N.W.2d 265 (Iowa 1979). While the appeal in that case was pending, defendant was tried and convicted on the perjury charge.

Defendant raises four issues, each of which he says entitles him to a new trial. They are as follows:

(1) Error in permitting the admission of certain evidence from the first murder trial.

(2) Error in permitting evidence of the alleged perjurious statements without first determining they were voluntarily made.

(3) Error in denying defendant's motion for directed verdict.

(4) Error in the jury instructions.

■ I. Defendant argues that certain evidence introduced against him was the product of oral and written statements given by him to authorities in the state of Missouri shortly after his arrest in 1975 in violation of his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). This same argument was made in his second trial on the murder charge. *State v. Fisher*, 279 N.W.2d at 266–67. What we said there is controlling in this case. We adopt it as dispositive of defendant's first assignment of error.

■ II. Defendant next claims the alleged perjurious testimony should not have been allowed in evidence without a prior hearing out of the jury's presence to determine it was given voluntarily. He relies on *State v. Walton*, 247 N.W.2d 736 (Iowa 1976).

*Walton* has no application here. We quote from that opinion (247 N.W.2d at 739):

We have consistently held that when issues are raised regarding the validity of a *Miranda* waiver and voluntariness of alleged inculpatory statements resulting from *custodial* interrogation, the defendant is entitled to a fair hearing out of the presence of the jury at which both the underlying factual issues and the legal issues "are actually and reliably determined." (Emphasis added) (Citations omitted).

Custodial interrogation is not involved here. The perjurious statements were made at defendant's request for permission to testify. He was questioned by his own attorney in a formal judicial hearing. Under the circumstances, defendant's argument borders on being frivolous.

The matter is put to rest by this quotation from *United States v. Mandujano*, 425 U.S. 564, 579–80, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212, 224 (1976):

*Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against *compulsory* self-incrimination; the prescribed warnings sought to negate the "*compulsion*" thought to be inherent in police station interrogation. But the *Miranda* Court simply did not perceive *judicial inquiries* and custodial interrogation as equivalents: "the compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery."

The Court thus recognized that many official investigations . . . take

place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion in *Miranda* reveals a focus on what was seen by the Court as police "coercion" derived from "factual studies [relating to] police violence and . . . physical brutality . . . ." To extend these concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda* ; . . . . (Emphasis supplied) (Citations omitted).

■ III. Defendant next claims there is no corroboration to support his conviction. He points to the rule that proof of conflicting statements made under oath will not alone suffice. *State v. Mutch*, 218 Iowa 1176, 1179–80, 255 N.W. 643, 644 (1934). We said there:

It is true that the general rule is that a statement of the accused directly contradicting that upon which the perjury is assigned is not sufficient evidence of the falsity of the latter, and that other additional extrinsic evidence is necessary to establish its falsity. This rule has been announced in the text-books as well as in the decisions of the courts of various states.

At defendant's first murder trial he gave detailed testimony concerning the events leading up to Howard Miller's death. He relied there on self-defense. We reversed for error in the instructions on that issue.

The testimony upon which the perjury charge is based recanted this version. Defendant said he could recall nothing about the slaying and that what he said at his first trial was completely false.

We find ample corroboration from the testimony of Myra Miller, Gene Vine, and Linda Lyon. Myra Miller was the murder victim's wife. She was also the object of defendant's affection. The murder was apparently committed so that, to quote one of defendant's statements, she would be "all mine now." Mr. Vine and Mrs. Lyon were employees of the Department of Court Services. They interviewed defendant in connection with preparing a presentence report.

Myra Miller gave her version of the details surrounding her husband's murder. It differed from defendant's story in many details and refuted his assertion that his first-trial testimony was a "fabrication" that "me and Myra had worked on." The testimony of Mr. Vine and Mrs. Lyon virtually destroyed defendant's claim he did not remember how the killing occurred by repeating his detailed recitation of the very facts he later says he could not remember.

This brings up another claim asserted by defendant. He says he testified only that he had no recollection of killing Mr. Miller and that an imperfect memory does not make him guilty of perjury. But the evidence shows much more than a memory lapse. He said he had testified falsely at his first murder trial and denied virtually all of the statements he made there under oath. We do not mean to say the I-do-not-remember ploy cannot furnish the basis for a perjury charge. We say only that defendant went far beyond that in his testimony at the sentencing hearing.

Defendant attacks, too, the materiality of his statements. "Materiality" is one of the elements necessary to convict. In *State v. Gartin*, 271 N.W.2d 902, 914 (Iowa 1978), quoting from *State v. Deets*, 195 N.W.2d 118, 122 (Iowa 1972), we said:

"A false statement of fact knowingly made under oath or affirmation is material and will support a charge of perjury if it directly or circumstantially (1) supports or attacks the credibility of a witness, or (2) has a legitimate tendency to prove or disprove some relevant fact irrespective of the main fact at issue, or (3) is capable of *influencing the court*, officer, tribunal or other body created by law *on any proper matter of inquiry*." (Emphasis added)

The false testimony defendant gave was designed to influence the sentencing court. Its materiality is demonstrated by its effect: it resulted in permitting defendant to withdraw a guilty plea and to have a jury trial which, at that point, he had waived.

We find the evidence overwhelmingly supports the verdict.

IV. Defendant's last assertion concerns the instructions. This arises because the information and the instructions treated a series of questions and answers as a single statement. Defendant argues this permitted the jury to convict him even though the jurors differed on which of his answers was false. He requested an instruction setting out his theory, which the trial court refused to give.

Defendant misconceives the import of the instructions. The jury was told *all* of the specified testimony must be proven false. This instruction was more favorable to defendant than he was entitled to. The state could have predicated its prosecution on each individual false answer. Proof of any one would then have been enough. Instead the state undertook to prove the falsity of all.

We also find the instructions as given embodied the substance of defendant's requested instruction. The trial court need not accept defendant's language as long as the issue is fully and fairly presented. *State v. Millspaugh*, 257 N.W.2d 513, 515 (Iowa 1977).

V. We find no reversible error, and the judgment is affirmed.

AFFIRMED.