**STATE of Iowa, Appellee,**

v.

**Larry Ray THOMAS, Appellant.**

**No. 54527.**

Supreme Court of Iowa.

March 28, 1973.

Richard A. Knock, Cedar Falls, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., and David Dutton, Black Hawk County Atty., for appellee.

Heard before MOORE, C. J., and LeGRAND, REES, UHLENHOPP and HARRIS, JJ.

LeGRAND, Justice.

This matter is here because defendant says the trial court erred in accepting his plea of guilty to the crime of robbery with aggravation, committed in violation of section 711.2, The Code, 1966. We affirm the trial court.

While the charge against defendant was pending, he filed a motion asking that his competency to stand trial be determined by a hearing under chapter 783, The Code, 1966. This motion was granted, and a jury found defendant competent. The case was then set for trial.

On the day trial was to begin, defendant appeared before the court and stated his desire to enter a plea of guilty. Defendant's attorney—who also represents him here—vigorously objected and recommended that the court reject the plea.

After interrogation by the court, defendant was permitted to plead guilty. Thereafter, again over the objections of his attorney, he was sentenced to a term not to

exceed 25 years in the penitentiary, as provided in section 711.2, The Code, 1966.

Defendant seeks a reversal on the single assignment his guilty plea was invalid because there were circumstances before the trial court raising a reasonable doubt as to his competency. He relies strongly on Hickey v. District Court of Kossuth County, 174 N.W.2d 406 (Iowa 1970) and State v. Sisco, 169 N.W.2d 542 (Iowa 1969).

The issue, then, is whether there were circumstances present which made it incumbent upon the trial court to demand further demonstration of defendant's competency before accepting the proffered plea.

Although one might think otherwise, the issue is confused, rather than clarified, by the determination of defendant's competency to stand trial by the aforementioned proceeding under section 783.1, The Code, just a month before the guilty plea was entered. This finding gives rise to defendant's principal complaint—that the trial court took the jury verdict as conclusive on the question of his competency to enter a guilty plea.

Defendant insists this violates the Sisco precepts, which require the trial court to personally make a determination of the validity of the plea when it is tendered and which forbid delegation of that obligation to anyone else, including a jury.

In Sisco we said:

" * * * [A] sentencing court may not abrogate or delegate to anyone, including attorney for accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or existence of facts supporting it." (169 N.W.2d at 548.)

In case there still remained any uncertainty about the trial court's duty, we added this at 169 N.W.2d, page 549:

"We are persuaded and now hold, when a guilty plea is entered by defendant, the court must address the accused personally and by that procedure heretofore prescribed [which approved and adopted in substance the provisions of rule 11, Federal Rules of Criminal Procedure and the A.B.A. Minimum Standards for Criminal Justice] determine whether he understands the charge made, is aware of the penal consequences of the plea, and that it is entered voluntarily. *Nothing less will suffice*." (Emphasis added.)

Defendant would liken this case to Hickey v. District Court of Kossuth County, supra, but we believe the two are easily distinguishable. In Hickey we held the trial court erred in accepting a guilty plea without a prior determination of defendant's competency under circumstances which raised a reasonable doubt of his mental capacity to "understand the nature of the proceedings against him and appreciate the consequences of his guilty plea." (174 N.W.2d at 410.)

In Hickey there was evidence defendant had been committed to a mental hospital from which he had not been discharged. The record was virtually silent as to the nature of his mental illness, the treatment rendered, or his condition at the time of his plea. On those facts, we held further investigation to establish defendant's mental competency was obligatory before his guilty plea could be taken.

In the Hickey case we spelled out the reasonable doubt which must exist in order to require such a prior determination. We said at 174 N.W.2d, pages 409 and 410:

"We have often held 'sanity', to which section 783.1 refers, is one's mental capacity at some stage of the trial. The test of insanity under this section, we have said, is defendant's mental capacity to appreciate the charge against him, understand the proceedings, and conduct his defense. (Citation.)

" 'Reasonable doubt' as used in section 783.1 exists when, after consideration of

all the relevant facts, one's mind is left in such a condition that he cannot honestly say he feels an abiding conviction to a moral certainty as to the truth of a matter, and 'doubt' is an attitude of mind toward the acceptance of or belief in a proposition, theory, or statement in which the judgment is not at rest but inclines alternately to either side. (Citation.)"

\*    \*    \*    \*    \*    \*

"Reasonable doubt must, therefore, be determined by a consideration of all the facts and circumstances obtained from reasonably trustworthy sources and which are in themselves sufficient to warrant a man of reasonable caution to believe the accused in a criminal matter can or cannot appreciate the charge against him, understand the proceedings, and help conduct his defense. Past commitments to a mental hospital, releases, and discharges, as well as medical or expert opinions, may be considered in the determination of such reasonable doubt, but they in themselves are not conclusive of the issue before the court.

"Should it appear that the defendant has been committed to and treated in a mental health institute as mentally ill, a showing as to the extent and seriousness of that illness is necessary before the trial court in a criminal matter can determine, in the first instance, whether there is reasonable doubt as to defendant's capacity to participate meaningfully in his trial or enter a plea of guilty to the crime charged."

We do not believe the present case falls factually within the Hickey rule. In the case at bar defendant's competency was submitted to a jury under section 783.1, The Code; in Hickey it was not. In the case at bar the trial court had the benefit of medical reports which were made available by stipulation of counsel; in Hickey this was not true. Here, too, the nature of defendant's illness was described, its effects detailed, and several medical opinions —conflicting—concerning the extent of his recovery were expressed; none of this was true in Hickey.

■    The most troublesome problem confronting us is the effect to be given a competency determination under section 783.1 when a guilty plea is later tendered. Defendant says the trial court treated it as conclusive, and we agree this is true. Defendant then argues this is the type of delegation of the trial court's duty which Sisco expressly forbids, and again we agree. We hold such a determination is a factor to be considered, but is not controlling.

Returning momentarily to our Hickey opinion, we observe we were there concerned principally with the import of section 783.1, but we neither announced nor implied that was the only course open to the trial court. In fact we clearly indicated the contrary by this language at 174 N. W.2d, page 410:

"Certainly here it was necessary to have a direct evaluation of defendant's mental illness, *either by the doctors who examined and treated him* \* \* \* *or by some other qualified person or persons who had recently examined him, before the court could resolve the question of reasonable doubt as to defendant's mental capacity to enter a plea of guilty.*" (Emphasis added.)

While at first glance there may appear to be some conflict between the constitutional requirements of due process laid down in Sisco and the statutory provisions of section 783.1 emphasized in Hickey, we believe they are entirely reconcilable and consistent. If conflict does exist, it must, of course, be resolved in favor of the Sisco standards, since we have declared them to be vital to due process.

■    By this somewhat circuitous route we return to our immediate problem. Does the fact the trial court erroneously considered the jury determination of defendant's competency as binding demand a reversal? We hold it does not.

When constitutional safeguards are involved, we are obliged to make our own evaluation of the totality of the circumstances under which rulings on those rights were made. If we find a defendant's constitutional rights were not infringed, he is not entitled to reversal.

Our task, therefore, is to examine all the circumstances before the trial court to determine if there then existed reasonable doubt as to defendant's competency to plead guilty to the crime of which he stood accused.

Under varying factual situations we have announced our obligation to make an independent evaluation of the circumstances upon which a waiver of constitutional rights depends. Of course, a guilty plea waives a number of those rights, as pointed out in State v. Sisco, supra, and State v. Dorr, 184 N.W.2d 673, 674 (Iowa 1971). As support for this rule, see State v. Ware, 205 N.W.2d 700 (Iowa opinion filed March 28, 1973); State v. Niccum, 190 N.W.2d 815, 824 (Iowa 1971); State v. Williams, 182 N.W.2d 396, 401 (Iowa 1970); and State v. McClelland, 164 N.W. 2d 189, 196 (Iowa 1969).

We have reviewed the record and carefully examined the transcript of proceedings at the time the plea was entered and also when sentence was pronounced. We have already said the jury verdict of competency is entitled to consideration. We also recognize the rule that a person's mental condition, once shown, is presumed to have continued until the contrary appears. State v. Allan, 166 N.W.2d 752, 758 (Iowa 1969); Davidson v. Piper, 221 Iowa 171, 174, 265 N.W. 107, 109 (1936); In re Brigham's Estate, 144 Iowa 71, 81, 120 N. W. 1054, 1058 (1909); 1 Jones on Evidence, section 3:83 (Sixth Ed. 1972); 44 C.J.S. Insane Persons § 56 (1945).

Of course the finding of competency was for the limited statutory purpose set out in section 783.1, but it is that very limited purpose with which we are concerned.

By agreement of counsel, the court also had before it the conflicting medical reports of doctors who had treated defendant and who had testified at the competency trial. Further the interrogation of defendant by the trial court reveals nothing to suggest his inability to understand the charges against him or appreciate the consequences of his plea. We set out the important parts of that interrogation:

"Q. Are you taking any medication at this time, any drugs? A. No.

"Q. Any tranquilizers or anything of this sort? A. No.

"Q. You haven't been taking any medication within the last several days, is that right? A. Right.

"Q. What is your educational background; how far did you go in school? A. What does that have to do with it? Seventh grade.

"Q. Seventh grade. And during the course of all of these proceedings have you had available to you, to read, the information that the county attorney's office filed against you charging you with robbery with aggravation? In other words, are you aware of the charge that's been filed against you? A. Yes, I am aware of it.

"Q. All right. It recites that on November 19, 1969, that you robbed one Wayne R. Fox, and at the time you had this—what was it, a pellet gun— A. Ah huh.

"Q. —with you. And is Mr. Fox, the man is the operator of this tavern known as, or at least he was the bartender at John's Place here in Black Hawk County? A. Yah, I think so.

"Q. All right. The minutes of testimony indicate that you did go there and that you did take out this gun and pointed it at Mr. Fox, and that then you demanded money from him, and that he did give you money totaling approxi-

mately $225.00 as a result of that incident? A. Ah huh.

"Q. Is that correct? A. (Nods yes.)

"Q. Apparently, from what I have gathered, you and Mr. Knock are having some difference in viewpoint about whether or not you should be permitted and whether he can recommend or go along with your desire to enter a plea of guilty in this case, is that correct? This is the main point of difference that you and Mr. Knock have, that you want to plead guilty and he is attempting to persuade you or counsel you not to plead guilty, is that a fair statement?

"THE DEFENDANT: What's your plea, what do you plead?

"MR. KNOCK: I entered a plea of not guilty for you, Larry, some time back, and this is still my plea if I enter it for you.

"A. He pleads that and I plead guilty, that's right.

"Q. Except for this disagreement that you and Mr. Knock have had about whether or not you should be permitted to enter a plea of guilty, has he counseled you and attempted to advise you in all of these matters throughout the period that he's represented you in this case; do I understand, too, that you feel resentful toward him because you feel that he really has been hired by your mother and stepfather and really isn't representing your interests in the case? A. Right.

"Q. But most of this is involved with the fact that he doesn't feel you should enter a plea of guilty and you want to enter a plea of guilty, this is the main difference that you and he have had, is that correct? A. Yah.

"Q. And what is your plea to this charge of robbery with aggravation? A. Guilty."

* * * * * *

"THE COURT: All right. Mr. Thomas, I have got a couple more questions I would like to ask you, and you needn't come forward. I take it from everything that's been said that there really isn't much question about whether or not you actually did go into the tavern that night and did take out the gun and that as a result you were given from the bartender this sum of $225. The real problem that is involved is whether or not at the time that that incident took place you knew the difference between right and wrong, and therefore had the mental capacity to commit that crime. Now, you have heard Mr. Knock refer to the testimony and to the opinion of Dr. Johnson, and to the testimony and the opinion of Dr. Loeffelholz concerning this, and I think you were in the courtroom a month ago in July when they both testified at the previous trial, isn't that correct?

"THE DEFENDANT: Ah huh.

"THE COURT: You realize that the burden the State of Iowa—At least for the purposes of this hearing, the Court is advising you that the State of Iowa has the burden of proving beyond a reasonable doubt, not only that you committed the acts, but that you knew that what you were doing at the time was wrong. Furthermore, are you aware that the maximum sentence that the Court can hand down in this case in the event you do plead guilty or are found guilty by a jury is a term of 25 years in the penitentiary? You're aware that that is the sentence that can be handed down in this case, is that true?

"THE DEFENDANT: (Nods yes.)

"THE COURT: You will have to speak yes or no for the reporter.

"THE DEFENDANT: Yes, I am aware of that.

"THE COURT: All right. And even though you're now advised that the bur-

den is upon the State to prove all of these aspects of this case, that you actually committed the offense and that you knew that what you were doing at the time was wrong, it's still your desire to enter a plea of guilty to this charge, is that correct?

"THE DEFENDANT: Well, that's what I have been trying to do for the last half hour.

"THE COURT: All right. Well, this is your desire and you're doing this being fully aware of the consequences of your plea and the burden that's upon the State to prove that you committed these acts if you went to trial?

"THE DEFENDANT: Well, why prove it if I admitted it.

"THE COURT: All right. And there have been no threats or promises made to you in connection with your plea of guilty in this case, have there; no promises of leniency or anything of this sort?

"THE DEFENDANT: No."

■■ The trial court then accepted defendant's guilty plea, and we believe it properly did so. We find no basis for the argument that there were circumstances raising a reasonable doubt as to his competency to plead guilty. Perhaps we should mention we have not disregarded the fact defendant refused the urgent advice of his attorney, which he apparently feels is of great significance. However, the decision on how to plead belongs to defendant. Section 777.12, The Code. We said in State v. Rife, 260 Iowa 598, 602, 149 N. W.2d 846, 848 (1967) that the decision how to plead is "one for the defendant." We repeated that statement with apparent approval in the recent cases of State v. Kelley, 195 N.W.2d 702, 704 (Iowa 1972) and Walker v. Brewer, 189 N.W.2d 605, 609 (Iowa 1971). The fact that he did not

agree with counsel does not suggest incompetency.

In view of our conclusion defendant entered a valid plea of guilty, the judgment of the trial court is affirmed.

Affirmed.