STATE of Iowa, Appellee,

v.

Estell WALTON, Appellant.

No. 56647.

Supreme Court of Iowa.

April 16, 1975.

Fulton, Frerichs & Nutting, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., and Roxanne Barton Conlin, Asst. Atty. Gen., Des Moines, and David Dutton, County Atty., for appellee.

REES, Justice.

This is an appeal from judgment of conviction entered on defendant's plea of guilty to the crime of murder in the second degree. We reverse and remand for further proceedings.

A detailed chronology of the procedural and non-procedural facts of this case is necessary. Defendant was charged by county attorney's information with the crime of murder as defined in § 690.2, The Code, 1971 for the slaying of Henry Collins in a Waterloo tavern on the night of October 1, 1972. He originally pleaded not guilty to the charge.

While awaiting trial defendant attempted suicide in the Black Hawk County jail where he was confined. He was thereafter transferred to the Men's Reformatory for safekeeping and on authority of the court examined by two psychiatrists, one of his own choosing and the other selected by the State. Their findings as well as other evidence of record bearing on defendant's mental condition will be discussed *infra*.

After undergoing psychiatric examination defendant on March 16, 1973 filed notice of his intention to raise the defense of insanity at trial. Shortly thereafter he moved for production of the names of witnesses the State expected to call in rebuttal. The motion was overruled and trial commenced.

Early in the trial defendant made known to the court in chambers that he wished to change his plea of not guilty to guilty. After further discussion with defendant and counsel trial court dismissed the jury sitting on the case and ordered a hearing on defendant's competence to stand trial under chapter 783, The Code.

The only evidence introduced at the chapter 783 hearing, and in fact the only evidence ever formally presented on defendant's mental condition prior to the pre-sentencing hearing, was the testimony of his psychiatrist, Dr. Coleman Burns. Dr. Burns testified that tests performed on defendant indicated he suffered from "very definite organic brain damage of a chronic nature", had psychotic tendencies and "was unable to interpret reality". He diagnosed defendant as having a schizophrenic-like psychosis and hysteria symptoms when under stress and opined he was not then competent to stand trial. The psychiatrist employed by the State to evaluate defendant did not testify at the chapter 783 hearing and trial court overruled defendant's motion urged there for production of his report. The jury found defendant competent to stand trial.

After the chapter 783 hearing concluded and before trial on the merits recommenced the State made available to defendant the report of its psychiatrist, Dr. O. C. Dellamaddelena. It appears from the record of the pre-sentencing hearing where he later testified that Dr. Dellamaddelena had reached essentially the same conclusions regarding defendant's mental condition as had Dr. Burns, finding he had a chronic and long standing personality pattern disturbance, "schizoid type", diffused organic brain damage and a tendency to distort reality when under stress. Armed with evidence of Dr. Dellamaddelena's findings, defendant moved for new trial under chapter 783, alleging trial court erred in refusing to order production of his report, which defendant claimed was exculpatory. Trial court overruled the motion and set the case for trial on the merits.

Soon after trial resumed defendant again indicated to the court that he wished to plead guilty. Trial court then conducted an extensive inquiry into defendant's understanding of the charge against him and his awareness of the consequences of his plea. Periodically throughout the inquiry defendant's counsel interposed objections, arguing defendant was incompetent to understand the proceedings against him and was attempting to plead guilty against the advice of his counsel. In support of his position defendant was incompetent, counsel cited the reports of Drs. Dellamaddelena and Burns, both of which trial court was apparently aware. Defendant himself rambled incoherently through much of the proceeding, claiming he was pleading guilty to get out of Black Hawk County, to escape jail and to avoid his then existing circumstances, including a trial which he apparently believed was occasioned not by the facts but by personal animosity toward him. Much of what defendant said during the proceeding can only be described as hallucinatory.

The record reveals trial court on several occasions during the plea proceeding considered the possibility of submitting defendant to further psychological evaluation. In the end, however, no direct evidence on the question of defendant's competence was presented and the court after first refusing, finally accepted his plea of guilty over the protest of his counsel. Judgment was then entered on the plea and after a lengthy pre-sentencing hearing trial court sentenced defendant to life imprisonment.

On this appeal defendant contends

a) trial court erred in accepting his guilty plea;

b) trial court erred in refusing to order production of the names of witnesses the State expected to call in rebuttal on his defense of insanity;

c) trial court erred in overruling his motion for production of the state psychiatrist's report;

d) trial court erred in refusing to grant him judgment notwithstanding the verdict at the close of the hearing on his competence to stand trial.

We consider only the first two of these contentions.

I. It should be noted at the outset defendant does not challenge his guilty plea on grounds the guidelines for guilty plea proceedings laid down in State v. Sisco, 169 N.W.2d 542 (Iowa 1969) and Brainard v. State, 222 N.W.2d 711 (Iowa 1974) were violated. He instead argues the plea was improperly accepted because a) it was entered against the advice and over the protest of his counsel, b) he was incompetent to enter a knowing and voluntary plea of guilty.

Defendant's contention his plea should not have been accepted over the protest of his counsel is not persuasive. We have consistently adhered to the rule the decision how to plead is one for the defendant. This is so even where there is a question of defendant's competence lurking in the background. See § 777.12, The Code; State v. Thomas, 205 N.W.2d 717, 723 (Iowa 1973); State v. Rife, 260 Iowa 598, 602, 149 N.W.2d 846, 848 (Iowa 1967). See also State v. Kelley, 195 N.W.2d 702, 704 (Iowa 1972); Walker v. Brewer, 189 N.W.2d 605, 609 (Iowa 1971). We would not be inclined to overturn defendant's plea merely because it was entered against the advice and over the protest of his counsel.

Defendant's contention his plea was improperly accepted because his mental condition at the time of the plea proceeding precluded him from understanding the nature of the proceedings against him and hence from appreciating the consequences of his action raises a much graver problem. Relying on Hickey v. District Court of Kossuth County, 174 N.W.2d 406 (Iowa 1970), he argues there were circumstances before trial court raising a reasonable doubt as to his competence to plead guilty and that trial court erred in accepting his plea without first demanding further demonstration

of his competence. Our task here, then, is to examine all the circumstances before trial court to determine if at the time his plea was accepted there existed an unresolved reasonable doubt as to defendant's competence to plead guilty. See State v. Thomas, *supra*, 205 N.W.2d at 721.

■ Before reviewing those circumstances, we note the State attempts to counter defendant's contention his plea was improperly accepted because he was incompetent with the argument trial court's literal compliance with the *Sisco/Brainard* guidelines rendered the plea acceptable. We believe that argument is somewhat simplistic under circumstances such as these, where defendant's *competence* to plead guilty has been put in issue. For as the Ninth Circuit Court of Appeals has said, "(W)here a substantial question of a defendant's mental capacity has arisen in a criminal proceeding, it is logically inconsistent to suggest that his (guilty plea) waiver can be examined by mere reference to those criteria we examine in cases where the defendant is presumed competent, since in the latter cases no inquiry into the defendant's mental capacity to make the waiver is made". Sieling v. Eyman, 478 F.2d 211 (9th Cir. 1973). The ordinary guilty plea inquiry, while still necessary under such circumstances, simply cannot completely resolve the question whether the defendant can properly be said to have had "a rational as well as factual understanding." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). See generally, Note "Competence to Plead Guilty," 1974 Duke L.J., Vol. 1, p. 149 et seq.

We have recognized the ordinary *Sisco/Brainard* inquiry cannot by itself resolve questions of defendant's competence to plead guilty and have said that where circumstances before a trial court raise a reasonable doubt as to his competence the court must in addition to making the usual inquiry demand further demonstration thereof before accepting the proffered plea. State v. Thomas; Hickey, both *supra*. We have said we will set aside a guilty plea

where the record clearly suggests a question of defendant's mental capacity and trial court has failed to determine on his own motion whether a reasonable doubt exists. State v. Stoddard, 180 N.W.2d 448, 452 (Iowa 1970). See also State v. McCollom, 260 Iowa 977, 151 N.W.2d 519.

■■ Looking to the record in the instant case it seems clear to us an unresolved reasonable doubt did in fact exist as to defendant's competence to plead guilty at the time trial court accepted his plea. Before the court in one form or another were the psychiatric reports of Drs. Burns and Dellamaddelena alluded to above, both suggesting defendant suffered from chronic organic brain damage and was unable to interpret reality in stress situations. These reports, never controverted by other medical evidence, coupled with defendant's often incoherent and unresponsive digressions at the guilty plea proceeding raised in our judgment "reasonable doubt" as to defendant's competence to plead guilty. That doubt in turn should have made it incumbent on trial court to demand further demonstration, *e. g.*, additional medical evidence, of defendant's competence before accepting his proffered plea. *Hickey, supra.* It matters not on this record that defendant was found competent to *stand trial* at a prior hearing under Chapter 783 (on less than all the evidence), as that determination is only one factor the court should have considered in passing on his competence to plead guilty. State v. Thomas, *supra*. Here, in our judgment, that determination was in fact the *only* factor suggesting defendant was competent to plead guilty.

Because we believe the record clearly suggests a question of defendant's mental competence to plead guilty and trial court failed to resolve that question, *i. e.*, dispel the "reasonable doubt", by eliciting further demonstration of his competence, the plea must be set aside and this case remanded for a new plea proceeding at which defendant may plead anew.

II. Because we set aside defendant's plea and remand this case for a new plea proceeding, we give further consideration only to his claim trial court erred in refusing to order production of the names of the witnesses the State expected to call on his defense of insanity, as that issue alone of the remaining issues he raises here may arise again in the course of further proceedings below.

Section 777.18, The Code, requires a defendant who proposes to raise insanity as a defense to file written notice setting forth the names of witnesses, together with their addresses and occupations, and a statement of the substance of that which the defendant expects to prove by the testimony of each of the witnesses. The statute imposes the same requirement on a defendant who proposes to rely on a defense of alibi. There is no requirement for the State to furnish names of witnesses to be called in rebuttal on either defense.

The United States Supreme Court has recently held that where the State is accorded discovery of defendant's witnesses on a defense of alibi the defendant, in the absence of a strong showing of state interests to the contrary, is entitled to reciprocal discovery as a matter of due process. Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). Defendant argues here that the rule of *Wardius* applies as well where the defense of insanity is raised and that trial court's refusal to grant his motion for the production of the State's rebuttal witnesses on his defense of insanity denied him due process. The State appears to concede *Wardius* would now require reciprocal discovery where a defendant raises the defense of insanity but argues the decision should be applied prospectively, to only those cases tried after it was decided. The instant case was tried two months before *Wardius* was handed down.

We read *Wardius* to require reciprocal discovery in criminal cases in Iowa where the defendant raises either the defense of alibi or insanity and the State fails to make a strong showing of state interests to the contrary. Just as the State is accorded notice, tantamount to discovery, of defendant's witnesses under our statute in those cases, so too must the defendant be accorded discovery of the State's witnesses. Because we remand this case for a fresh plea proceeding and, potentially, new trial on the merits, we need not decide the question whether *Wardius* should be applied prospectively or retroactively. It will be applicable to this case on retrial.

Defendant's plea of guilty is set aside. We remand this case for such further proceedings in conformity with this opinion as may be necessary to effectuate a complete prosecution of this case.

Reversed and remanded.

All Justices concur, except MOORE, C. J., and MASON and LeGRAND, JJ., who dissent.