STATE of Iowa, Appellant,

v.

Eric RADEMACHER, Appellee.

No. 87–1448.

Supreme Court of Iowa.

Dec. 21, 1988.

Thomas J. Miller, Atty. Gen., Christie J. Scase, Asst. Atty. Gen., Lynn Fillenwarth, County Atty., and Richard Meyer, Asst. County Atty., for appellant.

Joseph L. Fitzgibbons, Steven D. Nelson, and Harold W. White of Fitzgibbons Bros., Estherville, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

This is an appeal by the State in a criminal prosecution. The trial of defendant, Eric Rademacher, on a charge of lascivious acts with a child under Iowa Code section 709.8 (1985) was terminated when the district court granted defendant's motion for mistrial based on prosecutorial misconduct. Subsequently, the district court ordered that retrial of the defendant was barred on double jeopardy grounds. The State seeks a reversal of that order. On review of the record, we affirm the district court.

The trial information in the present case charging defendant with a violation of Iowa Code section 709.8 was filed on October 29, 1986. The trial of the case to a jury commenced on July 21, 1987. The motion for mistrial which resulted in the termination of the trial and which gives rise to the double jeopardy issue presented on this appeal was based on a violation by the assistant county attorney of the district court's pretrial ruling on admissibility of evidence.

A pretrial motion in limine filed by the defendant sought to preclude testimony by a child abuse investigator employed by the Iowa Department of Human Services concerning a conceptual profile of child abuse victims and perpetrators which has been developed by an expert in the field. This profile involves matters such as rapport between victim and perpetrator, an unusual degree of sexual knowledge on the part of the victim, and notable reluctance of family members to disclose the surrounding circumstances. In ruling on the motion in limine, the district court stated:

> [T]he witness may testify that child sexual abuse follows recognizable and established patterns of behavior. Additionally, I think she may testify as to facts in this case, but I think that she'll not be allowed to testify or give her opinions about the facts of this case falling into a pattern of sexual abuse [under the profile]. [E]xperts are simply not allowed to express their opinions or conclusions on issues that are for the ultimate decision of the jury.

To that extent, Mr. Fitzgibbons, your limine motion is sustained, and the prosecutor is duly admonished not to inquire into these areas.

When pressed by the prosecutor for clarification of this ruling at a later point in the trial, the court stated:

> I spoke about the witness being able to testify that it's—child abuse falls into a recognizable, established pattern of behavior. And I think she can testify as to the facts as she knows them in this case, but may not testify or give her opinions about the facts of this case falling into a pattern of sexual abuse.
>
> Does that help you?

Following this explanation by the court, the following colloquy occurred:

> [ASSISTANT COUNTY ATTORNEY]: Okay. She can talk about the patterns of behavior?
>
> THE COURT: Yes.
>
> [ASSISTANT COUNTY ATTORNEY]: But she can't say in her opinion what patterns or what facts in this case fall within those patterns?
>
> THE COURT: No. I think she can— she can express the facts in this case as she knows them. I mean, I think that is a question for the jury whether or not the facts in this case fall into that pattern. And I really also basically feel it's up to the jury to make a determination as to whether sexual abuse occurred, and I think that's probably the way I'm going to rule.

Later, during the examination of the witness to whom the motion in limine related, the assistant county attorney asked her to outline the conceptual profile of child abuse behavior which had been developed by an expert identified as Dr. Susan Sgroi. After the witness had described some of the behavioral patterns contained in the profile, the county attorney directed the following question to the witness:

> Q. What characteristics or symptoms of Dr. Sgroi did you find in this case to be significant?

At this point, defense counsel interrupted, and the following colloquy took place out of the presence of the jury:

[DEFENSE COUNSEL]: I believe it was the Court's earlier ruling regarding this particular witness that she could talk about conceptual framework and then she could talk about it separately what factors there might be.

And now the question I believe posed to the witness is specifically, "What characteristics in this case—or, what characteristics of Dr. Sgroi's conceptual framework are present in this case and are significant", and I think it's beyond the Court's previous ruling, and I object to it....

Your Honor, the defendant makes the Motion for Mistrial and base it on the Court's previous ruling.

THE COURT: Mr. Meyer?

[ASSISTANT COUNTY ATTORNEY]: Your Honor, as I understand the Court's previous ruling, I was allowed to ask about the characteristics or patterns of behavior, and once I wanted her to talk about the significance in this case, and I specifically said in my question that I did not want her to talk about specific facts, but I did want to talk about characteristics or symptoms, and there are, as Mr. Fitzgibbons pointed out, a couple that probably don't apply in this case, and I don't talk about that....

THE COURT: I'd have to disagree with that, Mr. Meyer. My ruling on Miss Hagedorn's—or, Mrs. Hagedorn's testimony, and I'm rereading it now as I read it before, was that the report to the State would not be offered, and we had agreed on that.

Second, the witness would be able to testify as to the facts of this case as she understood them to be.

Third, she would be allowed to testify that child sexual abuse falls into recognized and established patterns of behavior. The witness would not be allowed to testify as to conclusions about sexual abuse.... I did not want the facts in this case applied to the behavioral problems.

Now, it seems to me when you ask the witness about significant behavioral patterns in this case, it is directly in violation of the limine ruling.

At this point, the motion for mistrial was overruled and the testimony resumed.

After directing more questions to the witness concerning characteristics developed in the Sgroi profile the assistant county attorney directed the following question to the witness.

Q. Miss Hagedorn, what facts did you see in this case that fit within the conceptual framework of Dr. Sgroi? A. We had a special relationship between Eric [defendant] and Elizabeth [the victim]. We had incidents that took place over time. We had increasingly intimate kinds of contact .... Secrecy was present in this particular case. We had—

At this point, defense counsel again moved for a mistrial. After a discussion between the court and counsel on the record out of the presence of the jury, the motion was granted.

The district court's order granting a mistrial was entered on July 23, 1987. On July 27, 1987, defendant moved to dismiss any further prosecution of the case on double jeopardy grounds. That motion was granted by the court on October 7, 1987. In the present appeal from that order, the State asks us to overturn the provisions barring reprosecution of the defendant.

## I. *Defendant's Jurisdictional Argument.*

■ At the outset, we consider a jurisdictional argument lodged by the defendant. He claims that the State is not entitled to an appeal as a matter of right from the October 7, 1987, order barring further prosecution. He bases his claim on language contained in *State v. Edwards,* 279 N.W.2d 9, 10 (Iowa 1979), which indicates that the State may appeal as of right only in cases where the defendant has not previously been placed in jeopardy. We disagree with this conclusion. First, to the extent that the argument is based on statutory interpretation, the statute under consideration in the *Edwards* case was section 793.1 of the 1977 Iowa Code. The appeal of the State in the present case was taken pursuant to Iowa Code section 814.5(1)(a) (1985). That statute grants the state a right of appeal from "[a]n order dismissing

an indictment, information, or any count thereof."

Moreover, we believe the reference in the *Edwards* case to instances where the defendant had not been placed in jeopardy was intended to denote that no appeal as of right would be granted in instances where the defendant had been acquitted in the district court. *See, e.g., State v. Fairmont Creamery Co.,* 153 Iowa 702, 716, 133 N.W. 895, 896–97 (1911). The latter consideration, we believe, pertains to issues of mootness rather than questions of jurisdiction. Such considerations are not present where the issue raised in the appeal is whether the double jeopardy bar should be invoked in instances where an acquittal has not occurred.

## II. *The Double Jeopardy Issue.*

■ Our consideration of the arguments of the parties pertaining to the double jeopardy issue is simplified by their agreement as to the applicable legal standard. Both parties accept as controlling law the plurality opinion of the Supreme Court in *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). That opinion declared that, even where a mistrial motion results from a clear prosecutorial overreaching, the public interest in allowing a retrial outweighs the double jeopardy bar. *Id.* at 675–76, 102 S.Ct. at 2089–90, 72 L.Ed.2d at 424. The double jeopardy bar will attach, however, if the Court finds it was the intention of the prosecution to deliberately force a mistrial situation with the aim of aborting the pending prosecution. *Id.* We recognized these standards for applying the double jeopardy bar of the federal constitution in *State v. Chase,* 335 N.W.2d 630, 632 (Iowa 1983), and *State v. Bell,* 322 N.W.2d 93, 94 (Iowa 1982). In the *Bell* decision, we also declared that the same principles are applicable in applying the double jeopardy protection afforded under the Iowa Constitution.

Faced with the parties' agreement as to the controlling legal standard, only a factual issue remains to be determined. Federal and state courts which have decided cases under the "intentional provoking of a mis-

trial" standard following the *Oregon v. Kennedy* opinion have agreed that the finding of subjective intent, which that standard calls into play, must be made in the first instance by the trial court. *See United States v. Sanchez,* 806 F.2d 7, 9 (1st Cir.1986); *United States v. Posner,* 764 F.2d 1535, 1539 (11th Cir.1985); *People v. Dawson,* 431 Mich. 234, 256–258, 427 N.W. 2d 886, 897 (1988).

Upon the initial submission of the appeal, we determined that the findings which the district court included in the October 7, 1987, order invoking a double jeopardy bar were inadequate to permit judicial review of that issue under the *Oregon v. Kennedy* standard. In order to correct this deficiency, we ordered a limited remand pursuant to Iowa Rules of Appellate Procedure 12(g) and 102 for purposes of having the district court make a supplemental finding of fact on the issue of whether the act of the prosecutor which prompted the mistrial motion was done with the intention of aborting the pending trial.

In compliance with that order, the district court prepared and filed supplemental findings of fact in the case. These included the following findings:

At one stage in the proceedings the relative · strength or weakness of the State's case became a subject of nonrecord conversation and the prosecutor volunteered the statement that "I'm probably going to lose this one anyway." The Court cannot remember if the statement was made in or out of the presence of defense counsel. The statement was made, however, before the State had received the Court's ruling in limine regarding the testimony of witness Hagedorn....

Clearly the Court did observe that the prosecutor had, at best, a difficult case. He relied heavily upon the testimony of witness Hagedorn to establish the Defendant's guilt. When the Court entered its ruling on the limine motion regarding this witness's testimony, the prosecutor indicated to the Court that the ruling was understood though it obviously changed what testimony the prosecutor

had planned to elicit from the witness. Yet, in subsequent exchanges between the Court and counsel, the prosecutor chose to repeatedly bring up portions of the ruling which he then professed to not understand. All proceedings regarding the limine motion and subsequent proceeding regarding it were made of record.

It was the Court's further observation that initially the prosecutor attempted to elicit the desired testimony from the witness without directly violating the limine order. Meeting with objection from defense counsel the prosecutor then attempted to circumvent the order and again elicit testimony he wanted. Again meeting with objection he finally elected to intentionally violate the limine order, knowing in advance that the Court would have no alternative but to sustain the mistrial motion, thus avoiding the acquittal which he apparently perceived to be a very real possibility.

. . . .

The Court's feelings about the trial tactics of the prosecutor have not changed to date from the time of the mistrial decision. The prosecutor was there for a win and when the Court's ruling threatened that win to the point of a possible acquittal, the Court feels that the prosecutor chose to avoid it by giving the Court grounds to sustain the mistrial motion thus aborting the trial.

■ The State contends the district court's supplemental findings exceed the scope of this court's order for a limited remand. We disagree with this contention. Although the language of the remand order requested the district court to make a "finding of fact," we are satisfied that reference to a single finding was precipitated by our belief that there would be only one finding of ultimate fact as to the intent of the prosecutor. We continue to believe this to be the case. The language employed in the order for limited remand was not intended to discourage the district court from fully setting forth those circumstances which prompted it to make the ultimate finding as to the prosecutor's intent.

■ The State also urges that the supplemental findings made by the district court on limited remand are lacking in evidentiary support and do not represent a reasonable inference to be drawn from the totality of the circumstances at trial. This contention touches on the pivotal issue in the case and calls into question the practical difficulties which arise in reviewing district court findings as to subjective intent of the litigants. The Supreme Court recognized these practical problems in *Oregon v. Kennedy* but believed them to be capable of solution. The Court observed:

[A] standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system.

*Id.* at 675, 102 S.Ct. at 2089–90, 72 L.Ed.2d at 424.

This language of the Supreme Court illustrates, we believe, that subjective intent of an actor is almost never capable of direct proof and must be inferred from those objective facts which tend to illuminate the actor's motives. One technique often employed in this regard is to infer that the actor intends that which is the natural consequence of the actions taken.[1] Our review of the district court's supplemental findings suggests that this was the approach taken in the present case to divine the prosecutor's intent. The court reasoned that the repeated violations by the prosecutor of its orders limiting admissibility of evidence eventually had to lead to a mistrial, and the prosecutor, as a person trained in the law, would be aware of that fact.

The State also urges that the district court's findings on limited remand are inconsistent with remarks made by the court

---

1. Juries in criminal cases are routinely instructed that such inferences are permissible. *See* Iowa Uniform Jury Instruction 200.2 (June 1988).

at the time the last mistrial motion was being argued. The record reflects statements by the court at this time indicating a belief that the prosecutor had perhaps not understood the clear import of the court's evidentiary rulings. The only conclusion which we can draw from this circumstance is that the district court clearly had second thoughts about the prosecutor's motives when it became necessary to examine them with more scrutiny within the context of an outcome-determinative finding of fact. The State has filed affidavits with this court prepared by both of the prosecuting attorneys present during the trial. These affidavits deny any intention on their part to abort the trial. That was the position taken by the State at the hearing which took place on the defendant's motion to dismiss. The position of the prosecutor on the intent issue has at all material times been made apparent to the district court, but that position was ultimately rejected in the court's findings of fact. Based on the circumstances shown to have occurred at trial, we cannot conclude that the district court's inferences as to the prosecutor's intent were incorrect.

In reaching this conclusion, we recognize that we have frequently said that, in regard to legal issues which carry serious constitutional implications, we must make our own evaluation of the totality of the circumstances under which the rulings on constitutional rights were made. *See State v. Brown*, 253 N.W.2d 601, 602 (Iowa 1977); *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975); *State v. Boren*, 224 N.W.2d 14, 15 (Iowa 1974), *cert. denied*, 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975); *State v. Thomas*, 205 N.W.2d 717, 721 (Iowa 1973). Notwithstanding our recognition of this rather broad scope of review in the determination of constitutional issues, we believe that the dispositive factual determination required to be made in the present case is one which the district court was in a far better position to resolve than this court. Consequently, we decline to disturb that court's ultimate finding, which, under the controlling legal standard, requires us to affirm the order of dismissal.

III. *Consideration by the District Court of Matters Not Shown on the Record.*

The last issue which we must consider is the State's claim that the district court, in making its supplemental findings, improperly referred to conversations which are not included in the official trial record prepared by the court reporter. This argument has reference to a statement which the court attributes to the prosecutor, off the record, that "I'm probably going to lose this one anyway." The assistant county attorney, who was in charge of this case, and the county attorney, who was also present during the trial, have both filed affidavits with this court denying that the statement was ever made.

■ Two questions arise in considering this issue: first, whether reliance on off-the-record remarks is permissible, and, second, if such reliance is permissible, how we are to deal with the factual dispute that has arisen concerning whether the challenged statements were made. With respect to the first of these questions, we believe that, if off-the-record remarks occur at a trial which have a bearing on an issue, the court may give such matters the weight to which they are entitled. In so doing, however, it is essential that this circumstance be disclosed in the court's decision. We believe that within the context of the issue raised in the present appeal a statement by a prosecutor may be illuminating as to the motives which prompted a particular course of action. *Cf. Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 563 (Iowa 1988).

■ The second question is more difficult to decide. Under our appellate rules, a party may seek to include unreported evidence or proceedings in the record on appeal by compliance with Iowa Rule of Appellate Procedure 10(c). Any difference of opinion between the litigants as to what occurred is, under rule 10(c), to be settled by the district court. The unreported evidence or proceedings which are challenged by the State in the present case were inserted in the record of the district court's

own volition as part of its supplemental findings. Our appellate rules do not appear to deal directly with that situation.

One commentator, writing on federal trial practice, speaks to this issue as follows:

[W]hile the trial judge may insert in the record his certificate as to what actually occurred before him, he should not do so unilaterally. The parties should be given an opportunity to give their own versions of what occurred and, if there is disagreement, to have them noted with the statement of the trial judge and included with his certificate. No other procedure seems fair . . . .

9 J. Moore, *Federal Practice* ¶ 210.08[1], at 10–57 (2d ed. 1988). The two prosecuting attorneys have filed affidavits with this court which we have considered along with the district court's version of the events which transpired. It is therefore incorrect to conclude that the district court has been permitted to unilaterally establish the record on this issue.

For purposes of resolving the factual dispute which has arisen between the court and counsel for the State concerning whether the challenged statement was made, this court is in a disadvantageous position. While this point of contention between the court and counsel for the State is somewhat disturbing, we are satisfied, based on our consideration of the totality of the events, that the statement which the court believed was made played a somewhat inconsequential role in its determination that the State had deliberately aborted the trial. Consequently, the uncertainty over this matter does not establish a basis for disturbing the district court's ultimate finding of fact on the controlling issue.

We have considered all issues presented and arguments made and determine that the order of the district court barring further prosecution of defendant should be affirmed.

AFFIRMED.