# IN THE COURT OF APPEALS OF IOWA

No. 16-2039
Filed December 20, 2017

**CLINT JASPER,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Crawford County, Duane E. Hoffmeyer, Judge.

A postconviction applicant appeals the denial of relief. **AFFIRMED.**

Drew H. Kouris, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

The State charged Clint Jasper with four counts of sexual abuse in the second degree—exposing him to the possibility of up to one-hundred years in prison. His attorney negotiated a deal with the State in which Jasper entered *Alford*[1] pleas to three counts of lascivious acts with a minor in return for an indeterminate twenty-year sentence. The district court accepted the plea agreement after engaging in a thorough colloquy with Jasper. Jasper did not file a direct appeal but did apply for postconviction relief (PCR) in which he challenged his plea attorney's performance. The district court denied relief, and Jasper now appeals. He alleges his counsel should have arranged for intelligence testing and failed to explain the plea bargain or what rights Jasper would waive by agreeing to it.[2] Finding no breach of duty by counsel, we affirm.

## I.      Facts and Prior Proceedings

The State anticipated presenting evidence that Jasper forced three children—ages three, four, and five years—to perform oral sex on him and attempted to sodomize two of the children. The State filed a trial information charging four counts of sexual abuse in the second degree, class "B" felonies, in violation of Iowa Code sections 709.1 and 709.3(2) (2012). Each count carried a twenty-five year term with a seventy-percent mandatory minimum.

Attorney Peter Goldsmith appeared for Jasper during the criminal proceedings. Goldsmith recalled talking to Jasper "numerous" times on the phone

---

[1] Under *North Carolina v. Alford*, 400 U.S. 25, 37 (1970), a defendant may consent to imposition of a prison term without admitting participation in the crime.
[2] Jasper also claims his plea was not knowing, voluntary, or intelligent. This issue was not preserved for our review.

and meeting in-person on multiple occasions. Together, Goldsmith and Jasper reviewed the videotaped interviews of the three children from Project Harmony, a Child Protection Center. During his representation, Goldsmith noted Jasper's below-average intellect. According to Goldsmith, he suggested Jasper be evaluated to determine his "mental health or his understanding."[3] Jasper refused, claiming he didn't want to be labeled "crazy," and remained steadfast in his refusal even after Goldsmith explained that would not be the purpose of the examination.

Because Goldsmith was aware of Jasper's intellectual limitations, he tried to use basic vocabulary, spent more time than usual going over issues, and had Jasper repeat things back using his own words to check for understanding. Goldsmith did not approach the district court to seek a competency hearing because he thought Jasper was competent and Jasper opposed an evaluation.

Goldsmith prepared for trial while also negotiating a plea deal. He knew Jasper did not want to admit guilt so he sought *Alford* pleas. Goldsmith and the prosecutor went through a series of offers before reaching an agreement satisfactory to Jasper. Goldsmith sent Jasper a letter detailing what rights he would give up through a plea agreement.

At the plea hearing, the court ensured Jasper was not impaired, was fully informed about his plea, and knew what rights he forfeited. The court periodically stopped to confirm Jasper didn't have any questions or need more explanation. The court accepted Jasper's *Alford* pleas to three counts of lascivious acts with a child, class "C" felonies, in violation of section 709.8. Jasper requested immediate

---

[3] Jasper claims he is the one who suggested an evaluation but Goldsmith did not arrange for one.

sentencing and received three terms of ten years each, one concurrent and two consecutive, for a total of twenty years without a mandatory minimum.

Once in prison, Jasper completed a skills intake assessment to gauge his educational proficiency. Eventually, Jasper sent Goldsmith a letter asking about an appeal. The appeal deadline had passed, so Goldsmith informed Jasper of his PCR rights. Jasper then filed this PCR action, arguing (1) he thought he was pleading to one count, not three, (2) he did not knowingly, voluntarily, and intelligently enter his pleas; (3) Goldsmith was ineffective for failing to explain the plea agreement and what rights were forfeited; and (4) Goldsmith was ineffective for failing to arrange a "psychological evaluation." Jasper asked the court to set aside his pleas so he could proceed to trial.

At the PCR hearing, Jasper testified by phone,[4] and Goldsmith testified in person. The State admitted Goldsmith's notes into the PCR record.[5] The PCR court denied Jasper's application, and he now appeals.

---

[4] Jasper conceded his initials appeared on the plea agreement but testified he did not remember initialing it and was confident he would not sign anything without agreeing. He testified he didn't know why he was in court the day of the plea hearing and didn't know what the judge was talking about when noting what constitutional rights Jasper was giving up. Jasper said he was "tired and distracted" when entering his pleas and wasn't really paying attention. Jasper conceded he agreed to the plea agreement to reduce his sentence but did not understand all the consequences. He could not remember receiving the letter from counsel and claimed he could not read or write well.

[5] Due to Goldsmith's handwriting, Goldsmith read several of his entries into the record.

**II.      Scope and Standards of Review**

We review PCR rulings for legal error unless they involve constitutional issues, in which case we review de novo.  *See Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012).  Because Jasper's ineffective-assistance claims are rooted in the Sixth Amendment, we review them de novo.  *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

To succeed, Jasper must show (1) his counsel failed to perform an essential duty and (2) prejudice resulted.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  If Jasper fails to establish either element, then we need not address the other.  *See Dempsey*, 860 N.W.2d at 868.  Our review of Goldsmith's performance begins with the presumption he performed his duties competently.  *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015).  We consider prevailing professional norms and individual circumstances.  *Id.*

**III.      Analysis**

**A.  Lack of Competency Testing**

Jasper argues Goldsmith should have arranged for a psychological examination to determine Jasper's "cognitive abilities."  PCR counsel alleges: "Jasper needed a psychological evaluation to determine his intelligence and his ability to understand the proceedings."  We interpret this claim as a challenge to Goldsmith's failure to explore Jasper's competency to enter knowing, voluntary, and intelligent guilty pleas.   A defendant may not be subjected to a criminal trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense."  *State v. Mann*, 512 N.W.2d 528, 531 (Iowa 1994) (citing

*Drope v. Missouri*, 420 U.S. 162, 171 (1975)).  But "[s]ubnormal intelligence is merely a factor to be considered in determining whether or not an accused is competent to stand trial.  It will not in itself bar trial."  *State v. Stoddard*, 180 N.W.2d 448, 449 (Iowa 1970) (citation omitted).

At a plea hearing, if the court is presented with circumstances calling a defendant's competency into question, the court must make the usual inquiries into a plea agreement and require the defendant demonstrate his competency to the court before accepting the plea.  *State v. Boge*, 252 N.W.2d 411, 414 (Iowa 1977); *State v. Walton*, 228 N.W.2d 21, 24 (Iowa 1975).  If the court fails to consider a defendant's competency when such circumstances are presented, then we are required to set the plea aside.  *See Walton*, 228 N.W.2d at 24.  But we only consider factors known by the court at the time of the plea colloquy.  *Id.* at 23.

At the PCR hearing, Goldsmith and Jasper offered divergent testimony, each claiming only he suggested an evaluation.  But having the opportunity to observe both witnesses, the PCR court found Goldsmith more credible.  Deferring to the PCR court's credibility finding, we conclude Goldsmith recommended Jasper undergo an evaluation, but Jasper refused.  *See Wycoff v. State*, 382 N.W.2d 462, 468 (Iowa 1986) (deferring to PCR court's credibility findings).

In light of Jasper's refusal, Goldsmith did everything he could to ensure Jasper understood the proceedings.  While Iowa Code section 812.3 permits defense counsel to allege "specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense" to compel the court to order a competency evaluation, Goldsmith was not bound to do so

here. *See* Iowa Code § 812.3(1), (2). The attorney's interactions with Jasper convinced him Jasper was competent. Goldsmith's belief was corroborated by the plea record. Jasper responded appropriately during the colloquy with the court and did not signal any lack of understanding.

Jasper points to his prison intake assessment to show his low level of cognitive functioning. But he provided no reliable guidance on how to interpret the assessment's results. Jasper also provided no additional evidence at the PCR hearing regarding his competency, though the PCR court approved an expert witness to evaluate him and testify at the State's expense. On this record, Jasper is unable to show Goldsmith breached an essential duty by failing tp arrange psychological testing.

**B. Informing Jasper of the Plea Agreement and Forfeited Rights**

Next, Jasper argues Goldsmith failed to adequately explain the plea agreement and what rights Jasper forfeited by entering *Alford* pleas. The record does not support his claim.[6] Goldsmith sent Jasper a letter detailing the rights Jasper would give up if he agreed to a plea deal. Goldsmith also provided his case notes showing he had advised Jasper about "rights given up by [the] plea." Goldsmith's notes also indicate he had explained the various plea offers to Jasper. Jasper admitted taking the deal so he could get a shorter sentence, demonstrating

---

[6] At the PCR hearing, Jasper claimed he never saw the trial information or minutes of evidence, but during the plea hearing he stated he had seen those documents. Jasper claimed he thought he was pleading to only one count, but he initialed the plea agreement showing three counts and three counts were repeatedly referenced during the plea hearing. Jasper insisted he did not know what *Alford* pleas were, but specified in his PCR application that he had entered *Alford* pleas.

his understanding of the benefits of the plea agreement.  On this record, Jasper cannot show Goldsmith breached an essential duty.

### C.  Knowing, Voluntary, and Intelligent Plea Entry

Finally, Jasper claims he did not enter his plea knowingly, voluntarily, or intelligently.  Typically, plea challenges must be brought first through a motion in arrest of judgment.  *See* Iowa R Crim. P. 2.24(3)(a).  Jasper did not file a motion in arrest of judgment, though he was advised of that requirement by the plea court. While Jasper cannot challenge his plea directly, he could do so by claiming ineffective assistance of counsel in this regard.  *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011) (discussing exception to error-preservation rules). But he does not do so in his appellate briefing of this issue.  Accordingly, his claim is not properly before us.

But even if we read Jasper's briefing generously and assume his initial ineffective-assistance claims were intended to apply to this third challenge, we find no breach of duty by counsel in allowing Jasper to enter his *Alford* pleas.

Before a court may accept a plea it must confirm the plea is made voluntarily and intelligently and has a factual basis.  *State v. Meron*, 675 N.W.2d 537, 542 (Iowa 2004).  "To satisfy this requirement the court is required to make a specific inquiry into a number of matters set forth in [Iowa Rule of Criminal Procedure 2.8(2)]." *Id.*

Here, the plea court carefully went through the requirements.[7] The court confirmed Jasper was not coerced into pleading. The court specifically asked Jasper: "Has there been anything about this proceeding that you don't think you understand, you have questions about, or you feel you need to know before I indicate on the record whether or not I accept your *Alford* plea?" Jasper replied: "No." The court confirmed Goldsmith thought Jasper understood the charges and made the plea voluntarily. Then the court questioned Jasper again: "One last time, Mr. Jasper, any questions about what I've asked you about so far or anything that you feel you need to know?" Jasper replied: "No, sir."

To conclude Jasper's pleas were not knowing, voluntary, and intelligent would require us to ignore the entirety of the plea proceedings. We decline to reach that result. Goldsmith breached no duty in allowing Jasper to enter the *Alford* pleas.

**AFFIRMED.**

---

[7] The court did not specifically discuss any possible impact on Jasper's immigration status as required by Iowa R. Crim. P. 2.8(2)(b)(3), but the court did confirm Jasper is an American citizen, making any concern regarding immigration inapplicable.