# IN THE COURT OF APPEALS OF IOWA

No. 13-1838
Filed February 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES E. WARREN JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Gary D. McKenrick,

Judge.


        James Warren appeals from the judgment and sentence entered following

his convictions for burglary in the second degree and theft in the third degree.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Heather Ann Mapes, Assistant

Attorney General, Michael J. Walton, County Attorney, and Kelly Cunningham,

Assistant County Attorney, for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

James Warren appeals from the judgment and sentence entered following his convictions for burglary in the second degree and theft in the third degree, claiming the evidence was insufficient to support the jury's findings of guilt. We affirm.

## I.    *Background Facts and Proceedings*

At around midnight on June 2, 2013, Bridgette Sorenson, Kayleigh Paramentier, Brianna Rewerts, Ashley Gregan, and Sarah Schillig were relaxing at Sorenson's apartment after returning from a neighborhood festival. They were sitting on the back porch listening to music when Sorenson heard the screen door shut. Sorenson and Rewerts walked into the house to investigate. They saw a male standing on the porch going through the purses that had been on the kitchen table.

Sorenson described the intruder as an African American male who was "a little taller" than her (Sorenson is 5'11") and who was wearing a gray button-down shirt and dark pants. Rewerts also described the intruder as wearing a gray button-down shirt.

When he heard the women coming, the intruder "took off" running from the house with the purses. The area by the kitchen was "pretty well-lit" because the kitchen light was on. There was also a light right next to the back door, as well as a light in the alley outside the back door. Sorenson was able to view the intruder's back and side for approximately fifteen to twenty seconds in these lit areas. Rewerts stated she observed the intruder for "like ten, fifteen seconds" before he ran away.

A Davenport police officer responded to Sorenson's apartment on a report of a burglary. Approximately twenty minutes later, another officer found a possible suspect walking down the street near the apartment, James Warren, a 5'9" African American male "wearing dark clothing," whom he believed matched the description provided by Sorenson and Rewerts. After a short chase, the officers apprehended Warren and placed him in custody. Several purses were discovered nearby.

Sorenson and Rewerts accompanied an officer to the location police were holding Warren approximately two blocks away. Sorenson and Rewerts both identified Warren as the male intruder in Sorenson's apartment that evening. Neither had any doubt in their minds Warren was the same person. Rewerts also identified one of the purses recovered near Warren as belonging to Gregan.

Warren was charged with burglary in the second degree, in violation of Iowa Code sections 713.1 and 713.5 (2013), and theft in the second degree, in violation of sections 714.1(1) and 714.2(2). Warren pled not guilty, and the case proceeded to trial. At trial, the jury heard testimony from the women at the apartment (Sorenson, Rewerts, Gregan, Schillig, and Paramentier), and the Davenport police officers involved in responding to the apartment and locating and apprehending Warren (Erik Johnson, Gregory Mahieu, and Robert Welch).

The jury found Warren guilty of burglary in the second degree and theft in the third degree. The district court sentenced Warren to terms of imprisonment not to exceed ten years on the burglary count and not to exceed two years on the theft count, to run concurrent. Warren appeals.

## II.    *Standard of Review*

We review challenges to the sufficiency of the evidence for correction of errors at law.    *State v. Edouard*, 854 N.W.2d 421, 431 (Iowa 2014).    We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence."    *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (internal quotation marks omitted).    "We will uphold a verdict if it is supported by substantial evidence."    *State v. Jacobs*, 607 N.W.2d 679, 682 (Iowa 2000).

## III.    *Discussion*

Warren's claim on appeal relates to the sufficiency of the evidence to support his convictions.[1]    Specifically, Warren contends there was insufficient

---

[1] Insofar as trial counsel failed to preserve error on this claim, Warren claims counsel was ineffective.    If a motion for judgment of acquittal lacks specific grounds, those grounds are not preserved.    *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal."); *see also State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011) ("Failure of trial counsel to preserve error at trial can support an ineffective-assistance-of-counsel claim.").    At the close of the State's case, trial counsel moved for judgment of acquittal, stating:

> If the Court is to view the facts in the light most favorable to the prosecution, it would be as follows: That the two supposed eyewitnesses gave different stories, both vague stories, which were actually different than what they actually told the officers with regards to hair, no hair; nobody said anything about a mustache; one gal said they saw the front, the other one said they only saw the behind, then later I saw the side. The officer kind of dirtied the pool a little bit when he said to them that, We're going to take you to see the guy that did it.    And, by the way, before he left, tells them that, Oh, we found the purses on or near him. So that ID is worthless, frankly, the one that supposedly took place a few minutes away from the home.
>
> With regard to the officers, Mahieu never saw the person he apprehended—which ultimately became Mr. Warren—carrying the purses, nor did he find any items on Mr. Warren, the cell phones, anything.    The last witness, I guess—I guess all he has is that he wasn't quite sure what Mr. Warren was doing in the area.    More than one way to skin that cat.

evidence of a "reliable identification" of him as the perpetrator of the crimes.[2] Warren does not, however, challenge the admission of the eyewitness identifications or allege trial counsel was ineffective in failing to file a motion to suppress the evidence or otherwise object to the admission of the evidence.[3] In determining the sufficiency of the evidence, all evidence admitted during the trial, even erroneously admitted evidence, must be considered. *State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

The jury was instructed the State would have to prove the following elements of burglary in the second degree:

> 1. On or about the 2nd day of June, 2013, the defendant entered an occupied structure.
> 2. The defendant did not have permission or authority to enter the occupied structure.
> 3. The defendant did so with the specific intent to commit a theft.
> 4. Persons were present in or upon the occupied structure.

The jury was instructed the State would have to prove the following elements of theft in the third degree:

---

> For that reason, I would ask that the Court grant the motion.

We conclude Warren's sufficiency-of-the-evidence claim was raised in his motion for judgment of acquittal, and therefore, error has been preserved.

[2] Warren challenges the "police-arranged identification procedure" as unnecessarily and impermissibly suggestive, claiming:

> 1) Sorenson and Rewerts saw an intruder for 10-15 seconds outside an apartment; 2) Sorenson saw him from the back and profile; 3) 40-50 minutes later police transported them to a nearby location, informing them that a person and missing purses had been discovered; 4) the purse of Ashley Gregan was identified BEFORE a suspect was identified at the same location; and 5) both Sorenson and Rewerts together, contemporaneously, identified Warren who was in police custody and in handcuffs on a public street.

[3] In this vein, Warren's reliance on *State v. Ash*, 244 N.W.2d 812, 813 (Iowa 1976) (reviewing district court's failure to exclude identification testimony) is misplaced. In contrast to *Ash*, the issue before us is not the admissibility of the challenged eyewitness testimony, but rather, whether the evidence before the jury was sufficient to support Warren's convictions.

1. On or about the 2nd day of June, 2013, the defendant took possession or control of property.

2. The defendant did so with the intent to deprive the owner of the property.

3. The property at the time of the taking had a value [of] more than $500 but no more than $1000.

Viewing the evidence in the light most favorable to the State, we conclude substantial evidence supports the jury's findings of guilt. The jury heard testimony from three investigating officers, as well as testimony from two women who saw Warren rummaging through purses at the apartment and identified Warren as the intruder less than one hour later. In particular, Sorenson was able to observe the intruder for approximately fifteen to twenty seconds before he ran away, and an additional couple of seconds while she attempted to pursue him. Sorenson stated there was no doubt in her mind Warren was the person she saw in her apartment earlier that evening.

Moreover, with regard to eyewitness identification, the jury was instructed:

The reliability of eyewitness identification has been raised as an issue. Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to see the person at the time of the crime and to make a reliable identification later.

In evaluating the identification testimony of a witness, you should consider the following:

1. If the witness had an adequate opportunity to see the person at the time of the crime. You may consider such matters as the length of time the witness had to observe the person, the conditions at that time in terms of visibility and distance, and whether the witness had known or seen the person in the past.

2. If an identification was made after the crime, you shall consider whether it was the result of the witness's own recollection. You may consider the way in which the defendant was presented to the witness for identification, and the length of time that passed between the crime and the witness's next opportunity to see the defendant.

3. An identification made by picking the defendant out of a group of similar individuals is generally more reliable than one

which results from the presentation of the defendant alone to the witness.

    4. Any occasion in which the witness failed to identify the defendant or made an inconsistent identification.

"[J]uries are presumed to follow the court's instructions." *State v. Becker*, 818 N.W.2d 135, 162 (Iowa 2012). And "it is for the jury to judge the credibility of the witnesses and weigh the evidence." *See State v. Laffey*, 600 N.W.2d 57, 59-60 (Iowa 1999). "[U]nless the record lacks substantial evidence, we are bound by the jury's verdict." *Id.* Considering the record before the jury, we conclude the jury could have reasonably believed the testimony of the officers, Sorenson, and Rewerts in reaching the conclusion that Warren was the perpetrator of the crimes at issue in this case.

We affirm the judgment and sentence entered following Warren's convictions for burglary in the second degree and theft in the third degree.

**AFFIRMED.**